## SHAW et al. v. CITIZENS' BANK OF HAYNESVILLE, LA.

(Circuit Court of Appeals, Eighth Circuit. December 9, 1925.)

No. 6966.

**1. Bills and notes ⬤═489(6)—Failure of consideration must be properly alleged and proven.**

Under Uniform Negotiable Instruments Act Ark. § 24, where instrument sued on was negotiable promissory note, it imported a consideration, and under Crawford & Moses' Dig. § 1194, subd. 3, it was incumbent on defendants to properly allege and prove failure of consideration.

**2. Contracts ⬤═86—Omissions of contractor held not total failure of consideration.**

Failure of oil-drilling company to wholly perform contract, by breaching certain terms and conditions as to manner of performance, did not constitute total failure of consideration, but no more than partial failure of consideration.

**3. Contracts ⬤═341—Plea of partial failure to perform should allege breach, with amount of damages resulting therefrom.**

Defense setting up partial failure of consideration, consisting of defective performance of oil well drilling contract, should have alleged the breach, that damages resulted therefrom, and amount thereof.

**4. Contracts ⬤═346(8)—Evidence of breaches of oil-drilling contract inadmissible, where answer does not allege any damages from such breaches.**

In suit to recover on note given for drilling oil well, answer alleging distinct breaches of drilling contract, but not alleging that any damages resulted therefrom, or amount thereof, does not permit proof of such breaches.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action by the Citizens' Bank of Haynesville, La., against J. B. Shaw and others. Judgment for plaintiff, and defendants bring error. Affirmed.

See, also, 293 F. 63.

J. S. Utley, of Little Rock, Ark. (William T. Hammock and W. R. Donham, both of Little Rock, Ark., and M. S. Cobb, of Hot Springs, Ark., on the brief), for plaintiffs in error.

Vincent M. Miles, of Ft. Smith, Ark. (Thomas B. Pryor, of Ft. Smith, Ark., on the brief), for defendant in error.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. The Citizens' Bank of Haynesville, La. (hereinafter called plaintiff), brought this action against J. B. Shaw, J. O. Vance, and M. F. Scott (hereinafter called defendants), upon a promissory note dated September 29, 1920, executed by the defendants and S. T. Wisby and J. F. Whitlock, payable to the order of the Trinity Drilling Company of Texas (hereinafter called Drilling Company) for the principal sum of $12,600, due 60 days after date, with interest from maturity at 6 per cent. per annum.

The plaintiff recovered a judgment against the defendants in the court below for the sum of $7,050 principal and $1,837.85 interest. From that judgment this writ of error was sued out.

On September 29, 1920, the Drilling Company entered into a contract with the Combination Oil Company, a common-law trust (hereinafter called Oil Company), to drill an oil well on lands belonging to the Oil Company. In this contract, the Oil Company is referred to as party of the first part, and the Drilling Company is referred to as party of the second part. This contract, omitting the formal portions, read as follows:

"The said party of the second part hereby agrees to drill a well for the purpose of producing oil or gas on a certain site already located and agreed upon by and between the parties hereto, near the center of the southeast quarter of the southeast quarter of section eight (8), township eleven (11) south, range eleven (11) west, Cleveland county, state of Arkansas, and to commence active operations for that purpose, and to continue said operations with due diligence to the completion of the well, except delays caused by strikes, inability to obtain material, or other necessary or unavoidable causes.

"The party of the second part agrees to use the derrick already on the lease where said well is to be drilled, or to tear down the same and build a new one, should it be necessary, and to furnish all necessary work and material to be used in the erection of said derrick and in the drilling of said well, and furnish all fuel, casing, union tool, rotary drilling rig, and in fact everything necessary for the drilling and completing a test well for oil or gas.

"In the event oil or gas is found, the party of the second part is to furnish the necessary gate valve and flow lines, not to exceed 100 feet, but the piping and tankage shall be furnished by the party of the first part.

"Said party of the second part agrees to make such tests of the well for oil and gas as are demanded by the agent or representa-

tive to be designated by the party of the first part.

"The said party of the second part agrees to pay all expenses incurred in drilling said well, it being agreed and understood that this shall be what is known as a turnkey job. The party of the second part agrees to personally supervise the drilling of said well, and to use all of its skill, diligence, and ability in the prosecution of the drilling of the aforesaid well, and to do all things necessary or proper to discover oil or gas in paying quantities in the aforesaid well, and also to furnish the party of the first part with a log of the well as demanded from time to time, and to furnish party of the first part with a daily report thereon as the well progresses.

"It is agreed that, in the event a delay in the drilling of said well shall be caused by the party of the first part, then the period of such delay shall be considered as shutdown time, for which the party of the second part shall receive as liquidated damages the sum of fifty dollars ($50.00) for each and every day of 24 hours and the necessary pay roll of the party of the second part on said well.

"The consideration for the drilling of said well is the sum of twenty-six thousand dollars ($26,000.00) and such shut-down time and day time as shall accumulate from time to time, of which consideration the sum of $22,-600 shall be paid in cash as hereinafter provided and the sum of $3,400 shall be paid in leases to be assigned and transferred to said party of the second part and to be placed in escrow in the Bank of Benton, Benton, Ark., to be kept by said bank until this contract shall have been completed in good faith; said leases are more particularly described as follows:

"South ½ of N. W. N. W. and north ½ of S. W. N. W., Sec. 9, 11, 11, containing 20 acres in each block, more or less, 40 acres in all and 1,000 shares of company stock.

"Said sum of $26,000, the cash consideration specified herein, shall be paid to said party of the second part as follows: The sum of $10,000 shall be paid when the rig shall have been set up at the designated place on the lease; the sum of $1,000 shall be paid when the well shall have been drilled to a depth of 1,500 feet; the sum of $3,000 shall be paid when the well shall have been drilled to a depth of 2,200 feet, and the balance of $6,600 shall be paid upon the satisfactory completion of the well to a depth of 2,500 feet. It is agreed and understood that the sum of $3,400 to be paid to said second party in leases shall be deducted from said balance of $6,600.

"It is further agreed and understood by the parties hereto that the payments hereinbefore specified to be made by said first party to said second party shall either be placed on deposit in the Bank of Benton, Benton, Ark., for the use and benefit of the said second party or that said Bank of Benton, Benton, Ark., shall guarantee that said payments shall be made to said second party on the terms and conditions herein stipulated and set forth.

"It is further agreed and understood that, if oil or gas shall be found in paying quantities at a depth of less than 2,500 feet by said party of the second part, then and in that event the full purchase price shall become due and payable to the said party of the second part.

"It is agreed and understood that if, after a well shall have been drilled to the depth of 2,500 feet and no oil or gas be found in paying quantities, then and in that event all of the casing on the job and the derrick shall be and become the property of the party of the first part."

The defendants, together with Wisby and Whitlock, were the trustees of the Oil Company. On September 29, 1920, the defendants and Wisby and Whitlock, in lieu of depositing $26,000 in cash and leases with the Bank of Benton as provided in the contract, paid the Drilling Company $10,000 in cash and gave the above described note. Thereafter the Drilling Company indorsed and transferred the note to the plaintiff.

Omitting the formal parts, the amended answer of the defendants read as follows:

"The Trinity Drilling Company on the 29th day of September, 1920, at Hot Springs, Ark., entered into a contract with the Combination Oil Company by the terms of which contract said Trinity Drilling Company, for a certain consideration, agreed to drill for said Combination Oil Company an oil well on the lands of the said Combination Oil Company in Cleveland county, Ark. A copy of said contract is attached to the original answer herein and marked Exhibit B. The promissory note, which is the basis of plaintiff's alleged cause of action, was executed by the defendants and others in part consideration of the above-mentioned contract, the makers of said note being at the time of its execution the trustees of the said Combination Oil Company.

"The said Trinity Drilling Company con-

tracted to furnish all things necessary in the drilling of said well and to prosecute the work of drilling same with diligence and skill and in a workmanlike manner until the well was completed. It contracted to pay all expenses incurred in the drilling of the well and agreed that said well should be drilled and delivered to the said Combination Oil Company as a 'turnkey' job.

"The said Trinity Drilling Company agreed to set all casings to a depth of 2,500 feet in a mechanical and workmanlike manner, so that there would be no leakage.

"The said Trinity Drilling Company violated its contract in each and all of these respects and so negligently and carelessly prosecuted the work of drilling said well as to make it practically impossible to complete the well. It did not use reasonable care or skill, nor perform its work in a workmanlike manner. It did not set the casings, ream or bale the well, as it contracted to do. Because of its negligence, carelessness, and lack of reasonable skill, the well was completely ruined.

"The Trinity Drilling Company abandoned its contract when the well had been drilled to a depth of 2,000 feet. Whereupon it became necessary for the said Combination Oil Company to employ others to complete the well, and, after employing others to complete the well, it was found that it was impossible to do so, because same had been carelessly and negligently ruined by the said Trinity Drilling Company.

"Notwithstanding the said Trinity Drilling Company contracted to furnish necessary casing for said well, it failed to do so, and the said Combination Oil Company bought and paid for casing used by the said Trinity Drilling Company, the amount paid by said Combination Oil Company being five thousand five hundred fifty dollars ($5,550.00), which amount should have been placed as a credit upon the note which forms the basis of plaintiff's claim."

At the trial, the defendants introduced proof to show that the Drilling Company failed to furnish casing in accordance with the drilling contract, and that the Oil Company was compelled to expend, for casing to be used in the well, the sum of $5,550. In support of the other breaches of the drilling contract alleged in the answer, the defendants made the following offers of proof:

"Mr. Utley: In order to establish a breach of contract, the defendants offer to show and prove by this witness—

"The Court: In addition to the $5,550 paid for the casing.

"Mr. Utley:—the defense offers to prove by this witness that he assisted Mr. Ross, the driller, who took charge of the job of completing the well after it had been abandoned by R. E. Jones and the Trinity Drilling Company, in measuring the depth of the well, and that the depth of the well, according to said measurements, was 2,385 feet, and that he examined the drill stem left at the abandoned well by the Trinity Drilling Company and R. E. Jones; that about 195 feet of said drill stem was kinked or twisted; also that R. E. Jones, who was the driller for the Trinity Drilling Company, told the witness that the case in the well was down to 1,200 feet, and was stuck, because it was frozen, and it was impossible for him to go deeper.

\* \* \*

"Mr. Utley: The defendants offer to prove, by several witnesses who are present and in attendance, who are qualified to testify as experts, that at the time the Trinity Drilling Company and R. E. Jones abandoned the drilling of the well in question the well had been drilled to a depth of only 2,385 feet; that the casing stuck at 1,200 feet, and that the well was never cased below that point; that the sticking of casing is caused in oil wells either caused by the fact that the well is too small to admit the casing of the size used; that the casing in this instance was 8-inch casing; that the sticking of casing may also be caused by the fact that parts of the drill stem are kinked or twisted, causing the hole to be drilled crooked, and that the casing in this instance will become fastened in the hole thus drilled crooked; that casing will also stick by what is known as 'heaving' in oil wells; that is, a bulging in of the walls of the well, caused by reason of the fact that the driller pumps slush through his drilling apparatus, which is too thin to keep the walls of the hole sufficiently coated up to prevent the heaving or caving in; that if the well is drilled in a workmanlike manner, heaving and crooked walls may be prevented, provided the driller drills a hole sufficiently larger than the casing to prevent sticking, as above stated; that the sticking of the casing in the well in question, was produced by some of the causes above mentioned; that, in order to have prevented the sticking, good oil well drilling practice required that before the setting of the casing a well should be reamed out; that is, what is known as a reamer should be run down the well in a rotary fashion, so as to smooth the walls, and if this had been done in the well in controversy, in this instance, the probability of the sticking of the cas-

ing would have been lessened; that the setting of 8-inch casing requires that the hole be not less than 12 or 12½ inches in diameter, and that the hole in this case wasn't exceeding 9 or 9½ inches."

The trial court held that, since no damages had been alleged as a result of these other breaches, this proof was inadmissible, and rejected the same. The assignments of error here are all predicated upon this ruling of the court.

The contention of the defendants is that the answer set up a good plea of total failure of consideration, and that the proof in support thereof should have been received.

[1] The Uniform Negotiable Instruments Act was adopted in Arkansas in 1913. Sections 7760 to 7965, inclusive, Crawford & Moses' Digest 1921. Section 24 of the Uniform Act provides: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. * * *" The instrument sued on was a negotiable promissory note and it imported a consideration.

Arkansas is a Code state. Section 1194, subd. 3, of Crawford & Moses' Digest 1921, in part, reads as follows:

"The answer shall contain * * * a statement of any new matter constituting a defense, counterclaim or set-off, in ordinary and concise language, without repetition."

In the Code states, it is generally held that a total or partial failure of consideration is new matter which must be specially pleaded. 8 C. J. p. 916, § 1203, and page 965, § 1265; Sharpless v. Giffen, 47 Neb. 146, 66 N. W. 285; Pastene v. Pardini, 135 Cal. 431, 67 P. 681; Portuguese American Bank v. Schultz, 49 Cal. App. 508, 193 P. 806; Gleason v. Brown, 129 Wash. 196, 224 P. 930. It was therefore incumbent on defendants to properly allege and prove failure of consideration.

The Drilling Company performed part of the contract in accordance with its terms. It furnished a derrick, fuel, and rotary drilling rig. It kept and furnished a log of the well. It drilled the well to a depth of 2,385 feet. The answer did not allege, and the tendered proof did not show, that this part performance was of no value to the Oil Company. A well was drilled in undeveloped territory.

Such a well and the log thereof might well be of considerable value from a prospecting standpoint.

The offers of proof fell far short of the allegations of the answer. The proof offered did not show that the well was ruined. It did not show that the defects in the hole could not have been remedied, the casing properly set, and the well completed. The other proof in the record does not show the well was not completed, but rather indicates that it was. It shows that the Oil Company arranged with other parties for the completion of the well. The court asked the defendant Vance this question: "Was the well finished? Did you get any oil?" The witness answered: "I wasn't down there; they claimed they got some oil." This is the only evidence in the record going directly to the question of the completion of the well. The breaches, according to the tendered proof, were in preparing the hole for the casing and in setting the casing.

[2, 3] The Drilling Company, therefore, did not wholly fail to perform the contract, but in undertaking to perform the same it breached certain of the terms and conditions as to the manner of performance. Such omissions on its part did not constitute a total failure of consideration. Deaver v. Dillard & Bell, 16 Ga. App. 297, 85 S. E. 205. They might have been set up as a partial failure of consideration, if the defense was available to the defendants, who were not parties to the contract breached, a point unnecessary to decide. Such a plea, however, should have alleged the breach, that damages resulted therefrom, and the amount thereof. 8 C. J. p. 921, § 1205, and page 922, § 1206; Grunninger v. Philpot, 11 Fed. Cas. 96, No. 5,852, 5 Biss. 82.

[4] While the answer alleged distinct breaches of the drilling contract, it nowhere alleged that any damages resulted therefrom to the Oil Company or the amount thereof. It alleged breaches, but assigned no damages. Without allegation and proof of damages, the extent of the failure of consideration could not be determined. It follows that the evidence offered was not admissible under the allegations of the answer, and the trial court properly rejected the same.

The judgment is therefore affirmed.