HOGAN *v.* INTERTYPE CORPORATION.

## Opinion delivered October 7, 1918.

1. COMMERCE—SALE WITHIN STATE.—A sale of machinery by a foreign corporation to a resident of this State, where the machinery was shipped by the seller from another State to the shipper's order, and was delivered by the seller to the buyer within the State, constituted an intrastate transaction.

2. CORPORATIONS—FOREIGN CORPORATIONS DOING BUSINESS IN STATE.— Where machinery was sold and delivered within the State by a foreign corporation, without complying with Acts 1907, c. 313, this constituted doing business within the State, and a contract so made by such corporation can not be enforced by it.

3. CORPORATIONS—CONTRACTS OF FOREIGN CORPORATIONS—VALIDITY.— Where a foreign corporation sold machinery in this State in violation of Acts 1907, c. 313, and took a mortgage and negotiable notes in payment therefor, a *bona fide* purchaser of such notes cannot enforce same in the courts of this State.

Appeal from Sebastian Chancery Court, Greenwood District; *W. A. Falconer,* Chancellor; reversed and dismissed.

*R. W. McFarlane,* for appellant.

1. The notes and mortgage evidence a contract made in this State by a foreign corporation without complying with the laws of this State. 60 Ark. 122; 115 *Id.* 116; 124 *Id.* 539; 128 *Id.* 211; Acts 1907, 745.

2. It was error to render judgment without protecting appellant from suit in behalf of the Merganthaler Linotype Company. 65 Am. Rep. 186; 68 Mich. 303; 42 Miss. 795; 47 Ark. 351.

*Joe Hardin* and *G. C. Hardin,* for appellee.

1. The sale was not within the statute and plaintiff as assignee had the right to sue. It is a clear case of interstate business. The contract was made n New York and completed there. 60 Ark. 120; 90 *Id.* 73; 156 Fed. 1; 124 Ark. 539; 90 *Id.* 73. See also 85 Ark. 279; 57 *Id.* 24; 122 *Id.* 451; 77 *Id.* 203; 70 Pac. 765; 70 Ark. 525; 12 R. C. L. 87; 19 Cyc. 1305; 2 Ann. Cas. 68; 13 *Id.* 513; 99 Fed. 18; 1 Ind. App. 269; 1 Allen (Mass.) 436; 3 Gray (Mass.), 215; 8 *Id.* 206; 6 N. W. 66.

HUMPHREYS, J.  Appellee instituted suit in the chancery court of Sebastian County, Greenwood District, against appellant, to recover judgment and enforce a mortgage lien on a type setting machine for $1,810 and interest at the rate of 6 per cent. per annum from June 15, 1914, evidenced by a number of notes.

The chief defense interposed by appellant was that the notes and mortgage sued upon evidenced a contract made in this State by a foreign corporation without complying with the necessary statutory requirements prerequisite to doing business in the State of Arkansas.

The facts, in substance, are as follows:  On May 24, 1914, a salesman of the New Orleans agency of the International Typesetting Machine Company, with main office in New York, called on appellant in Huntington, Arkansas, and procured a written contract from appellant for a typesetting machine.  This contract was forwarded to the New Orleans agency, and the manager thereof considered it a contract which should be ratified by the company, and, for that purpose, sent it to the main office in New York on May 29th, recommending its acceptance.  On May 28, 1914, the manager of the New Orleans agency consigned the machine to the International Typesetting Machine Company, Huntington, Arkansas, "notify Dan Hogan."  According to the testimony of appellee, this manner of shipment was made in order that the machine would still be in the possession of the International Typesetting Machine Company in case the contract was rejected by it.  The contract was approved by the company at its main office, and notification thereof was mailed to appellant under date of June 13, 1914.  The written contract does not appear to have been introduced in evidence, so the only evidence as to its contents appears in the testimony of appellant which, upon this particular point, is as follows:

"Q.  State all the facts and circumstances incident to the making and delivery of the notes and mortgage

in question and of your purchase of the machine for which the notes and mortgage were given.

"A. A representative of the New Orleans agency for the International Typesetting Machine Company called on me at my office in Huntington, Arkansas, on or about May 24, 1914, and offered to sell me the typesetting machine upon terms which afterwards were agreed upon. I told him I would not purchase the machine until I knew that it would do the work he represented that it would do, and he proposed that, if I would pay the freight on the machine from New Orleans, he would ship it at once, and that he would send a man to set it up and demonstrate that it would do the work that he insisted it would do, and if the machine proved as represented I could purchase it upon terms agreed upon. On this agreement the machine was shipped from New Orleans to Huntington Arkansas, billed to 'International Typesetting Machine Company, notify Dan Hogan.' It arrived in Huntington, Arkansas, about June 5, 1914. I paid the freight on it and had it hauled to my office. About June 20 an agent of the company arrived in Huntington, who unboxed the machine, put it up and demonstrated to my satisfaction that it would do the work as represented. I thereupon executed and delivered to him the notes and mortgage sued on in this action. The notes, which were payable at the Bank of Huntington, were dated back to June 14, 1914, in accordance with my agreement with him." At the time the notes and mortgage were executed, the International Typesetting Machine Company was a New York corporation. A receiver was afterwards appointed for the company, and the assets of the company, including the notes and mortgage in question, were sold under order of court by the receiver to the appellee, Intertype Corporation. Neither corporation before or since the institution of the suit complied with the laws of Arkansas authorizing foreign corporations to carry on business in Arkansas.

On the pleadings and facts, the chancellor ruled the transaction interstate business, and not business done

within the State contrary to law by a foreign corporation; and, in keeping with the ruling, rendered a judgment against appellant in the aggregate of $2,137.90, declared said amount a lien upon the typesetting machine, and decreed a foreclosure of the lien, from which judgment and decree of foreclosure appellant has prosecuted an appeal to this court.

Appellant insists that the sale of the machine was consummated within the State, and therefore an intrastate, and not an interstate, transaction. According to the testimony of appellee, the property was shipped into the State of Arkansas to the International Typesetting Machine Company, so that it might retain possession thereof until the contract was approved at the home office in New York. Another way of stating the fact that the title to the property was not passed by the International Typesetting Machine Company to appellant until after it reached Huntington, Arkansas. We think it conclusively established by the facts in this case that the International Typesetting Machine Company owned the machine in question after it arrived in Huntington, Arkansas, and thereafter sold it to appellant, accepting in part payment notes executed and payable in Arkansas and secured by a mortgage on the machine, which was also executed and filed for record in this State. One test laid down by the Arkansas cases differentiating an interstate transaction from an intrastate transaction is the ownership of the property after it arrives within the State. *Clark* v. *J. R. Watkins Medical Co.*, 115 Ark. 166; *J. R. Watkins Medical Co.* v. *Williams*, 124 Ark. 539; *Miellmier* v. *Toledo Scale Co.*, 128 Ark. 211. An interstate transaction contemplates a consignor without and a consignee within a State, or *vice versa.* In the instant case, the property was not only retained by the seller after it reached Arkansas, but an agent of the seller was sent to the State for the purpose of demonstrating that the machine would do the work represented, in order to consummate the sale; and, after making a satisfactory dem-

ónstration, the agent accepted in part payment therefor long time notes executed and payable at Huntington, Arkansas, and a mortgage on the machine to secure the notes, which was recorded in Greenwood, Arkansas. This constituted a business transaction in Arkansas by a foreign corporation contrary to the statute law. Act 313, Acts 1907. The following authorities bear pointedly upon the issue here involved and sustain the rule announced by the court. *Browning* v. *Waycross,* 233 U. S. 16; *State* v. *Robertson,* 196 S. W. 1132; *General Ry. Signal Co.* v. *Commonwealth,* 87 S. E. 598; *American Amusement Co.* v. *East Lake Chutes Co.,* 56 So. 961; *Ft. Worth Glass & Sand Co.* v. *S. R. Smythe Co.,* 128 S. W. 1136; *Vulcan Construction Co.* v. *Harrison,* 95 Ark. 588.

Under section 2, Act 313, Acts 1907, a contract made by a foreign corporation without complying with the laws can not be enforced by it either in law or in equity. It is insisted by appellee that the enforcement thereof applies to the corporation taking the paper and not to its assignee. In this case, the plaintiff is an assignee of the original seller or taker of the paper. This very narrow and limited construction of the statute would render it nugatory. Under this construction all foreign corporations doing business in this State would likely escape the penalty imposed by the statute. It was necessarily the intention of the Legislature to render any paper growing out of a transaction of this character defective so that it could not fall into the hands of an innocent purchaser and be enforced in this State. We think the notes and mortgage evidenced a contract made by the corporation in violation of the statute laws of the State. The defect was inherent in the notes and mortgage, and therefore a subsequent purchaser must take notice of the defect.

For the error indicated, the judgment and decree is reversed and the cause dismissed.

SMITH, J., (dissenting). The majority opinion does not set out section 2 of the Act of 1913 which it construes. It reads as follows:

"Any foreign corporation which shall fail to comply with the provisions of this act, and shall do any business in this State, shall be subject to a fine of not less than one thousand dollars, to be recovered before any court of competent jurisdiction, * * * and, as an additional penalty, any foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid, can not make any contract in this State which can be en-forced by it either in law or in equity, and the complying with the provisions of this act after suit is instituted shall in no way validate said contract." Act 313, Acts 1907, page 744.

The International Typesetting Machine Company, in selling a machine to Hogan, committed no wrong *malum in se.* Upon the contrary, any wrong done is *malum prohibitum.* But for the act of the General Assembly in question, Hogan would not be permitted to escape the payment of the balance due by him to the typesetting ma-chine company which, with the interest, amounted to $2,137.90 at the time of the rendition of the decree for that amount in the court below. But for this statute, the vendor of the machine could itself recover the purchase price, and any wrong done by it consists only in failing to comply with the statute, and its action, therefore, was wrong only to the extent to which the statute has made it so.

All the States have not always had statutes of this character. Indeed, there are States which not even yet have found it necessary to enact such a statute; and, for that matter, Arkansas has not always had a statute for-bidding foreign corporations from bringing suit to enforce an otherwise valid contract, because of the corporation's failure to comply with a statute enacted for its regula-tion. This statute itself has encountered some vicissi-tudes, as a portion of it was held violative of the Con-stitution of the United States in the case of *Ludwig* v. *Western Union Telegraph Co.,* 216 U. S. (54 L. Ed. 423), 146. The portion of section 2, upon which the majority base their opinion in the instant case, was not involved,

however, in the opinion of the Supreme Court of the United States, *supra.*

Kansas is one of the States which has legislation similar to our own in the respect indicated, and a portion of their act met a fate similar to our own in the case of *Western Union Telegraph Co.* v. *State of Kansas* (54 L. Ed. 355), which is reported at page 1 of the same volume of the United States Supreme Court Reports in which the case of *Ludwig* v. *Western Union Telegraph Company* is found.

The Kansas statute has not received in that State the liberal construction here given the statute of this State. The Supreme Court of Kansas had before it the exact question here decided, and reached exactly the opposite conclusion. In the case of *Boggs* v. *O. S. Kelly Mfg. Co.,* 90 Pac. 765, the Supreme Court of that State said:

"A contract made by a foreign corporation while it is engaged in business in this State is not tainted and rendered unenforceable by the fact that the statute has not been complied with. *State* v. *Book Co.,* 69 Kan. 1, 76 Pac. 411, 1 L. R. A. (N. S.) 167. When a foreign corporation is precluded from bringing an action by reason of its noncompliance with the law, it is because of the personal disability with which it is burdened at the time. If it assigns the claim, its incapacity will not prevent the assignee from suing. *Northwest Thresher Co.* v. *Riggs* (Kan. Sup.), 89 Pac. 921. If it complies with the law, its competency as a plaintiff is restored, even if such step is taken after an action is begun. *Hamilton* v. *Reeves & Co.,* 69 Kan. 844, 76 Pac. 418. When it ceases to do business in the State, it is no longer under the bar of the statute. Its violation of the law having ceased, it has the same rights as a litigant as any other foreign corporation which is not attempting to carry on its business in Kansas. Its former disregard of the statute is not made a ground for denying it access to the courts. The plaintiff, therefore, could maintain the action." The case of *State* v. *Book Co.* is erroneously cited in that opin-

ion, as being in 1 L. R. A. (N. S.) 167; the opinion is found at page 1041, 1 L. R. A. (N. S.)   In the case last cited an attempt was made to cancel a contract made by the American Book Company with the State School Text Book Commission because that company had not complied with the laws of that State authorizing it to do business in that State.   The portion of the statute of that State there invoked is as follows:

"No action shall be maintained or recovery had in any of the courts of this State by any corporation doing business in this State without first obtaining the certificate of the Secretary of State that the statements provided for in this section have been properly made."

The opinion is a well-considered one, and cites many authorities in support of the conclusion announced.   The case note cites still other authorities.   Much of the reasoning of the court in that case is applicable here.   It was there said "the book company and the Text Book Commission each possessed every qualification necessary to bind by contract.   By the laws of their creation and organization they were each endowed with this faculty. * * * The statute described itself as an act 'providing for the regulation of foreign corporations and the method by which they may be permitted to do business in this State,' and it purports to cover that entire field. * * * It does not anywhere use the terms 'unlawful,' 'illegal' or 'void,' or any equivalent for them, as applied to the transaction of business without authority.   It does not declare any determination whatever to reach beyond the offending company and nullify wholesome business bargains in matters of lawful trade.   Foreign corporations may be supervised, but business is not proscribed * * *; the courts have no authority to interpolate in the law provisions concerning which the Legislature, with all the resources of the English language at its command, remained silent, or to annex penalties for a violation of the law which the Legislature, with a great arsenal to choose from, failed to mention.   Hence, contracts made with a foreign corporation before it has obtained permission to

do business in the State are not for that reason invalid or subject to cancellation.''

Among the other numerous cases cited by the court was the case of *State Mutual Fire Ins. Asso.* v. *Brinkley Stave & Heading Co.*, 61 Ark. 1. In this Arkansas case Mr. Justice HUGHES, speaking for the court, quoted with approval the following statement of law from the case of *Toledo Tie & Lumber Co.* v. *Thomas,* 11 S. E. 37:

''* * * it is stated—correctly, as we think—by the Supreme Court of Appeals of West Virginia that 'a contract made by a foreign corporation before it has complied with the statutory prerequisites to the right to do business in another State will not on that account be held absolutely void, unless the statute expressly so declares; and if the statute imposes a penalty upon the corporation for failing to comply with such prerequisites, such penalty will be deemed exclusive of any others.' (See cases cited in that opinion.)''

And upon its own authority, in the same opinion, this court, in construing a statute of this State, said: ''The insurance contracts in this case were not void on account of the failure of the insurance company to comply with the statutory prerequisites to the right of a foreign insurance company to do business in this State. The penalty imposed by the statute was exclusive of any other forfeiture. *Washburn Mill Co.* v. *Bartlett,* 54 N. W. 544; 2 Morawetz, Corp., § 665.''

It will be observed that our statute, like the statute of Kansas, is characterized by the absence of the words ''unlawful,'' ''illegal'' or ''void,'' or any equivalent for them, as applied to the transaction of business without authority. And, in my opinion, we have not only given the statute a construction which the Supreme Court of Kansas refused to give it, but we have given it a construction which is not in harmony with previous utterances of this court in the construction of the statute.

In the case of *Waxahachie Medicine Co.* v. *Daly,* 122 Ark. 451, we held (to quote the syllabus): ''A contract made by a foreign corporation before complying with

the laws of this State, is not made void by Act 313, page 744, Acts of 1907, and when the laws are complied with before suit is brought, such contracts are enforcible.''

We there expressly held that such a contract as we have here was not void, although the statute had made it unenforceable either in law or in equity. I think the doctrine of that case can not be reconciled with the opinion in the instant case. See also *Watkins Medicine Co. v. Horne,* 133 Ark. 570.

There is no intimation in the record in the instant case that the assignee of the note and the vendor of the machine had in any way conspired together to circumvent the law. The contrary affirmatively appears, and the opinion recognizes the plaintiff in the suit as an innocent purchaser. Can it be the law that commercial paper originating in Arkansas can not be safely purchased in the usual course of business without inquiry as to whether foreign corporations connected with such paper have complied with the laws of this State?

The courts everywhere have always held that statutes, either penal or criminal, must be strictly construed, and the decisions of this State have not been discordant. We have a number of cases which are in harmony with an almost infinite number of other cases to that effect. The statute here is both penal and criminal, and such statutes have always been construed to exclude all persons and transactions from their operations which are not expressly included by their provisions. Only by the most liberal construction can our statute be made to include the innocent holder of negotiable paper, and that result is arrived at only by taking into account the supposed purpose of the Legislature, rather than the language of the statute. But if the statute was neither penal nor criminal, should it receive the construction here given it? I think not. We are not called upon here to decide what the effect of collusion would be between a corporation and its assignee, as we have no such case before us, and we should not, to prevent the mere possibility of collusion, give the statute a construction which may, in a measure,

at least, affect the negotiability of commercial paper originating in this State.

Now, if the case is to be settled upon precedent rather than upon principle, I think our duty is equally free from doubt. A statement of the law contrary to the holding of the majority will be found in 8 C. J., § 1038, 12 R. C. L. § 59, 19 Cyc. 1305. Appended to these texts will be found notes citing a large number of cases.

At the section of Corpus Juris, above referred to, the law is stated as follows: "If a negotiable note is given to a foreign corporation in a transaction which is illegal, because of the corporation's failure to comply with the conditions precedent to the right to do business prescribe by statute, the illegality can not be set up as against a *bona fide* purchaser for value without notice; and the word 'assigns' as used in a statute making the contract void on behalf of such corporation 'or its assigns' does not include the *bona fide* holder in due course of a negotiable instrument."

A number of cases are cited as supporting the text quoted, and only one case is cited as opposing, and that is the case of *First Nat. Bank of Massillon* v. *Coughron,* 52 S. W. 1112. This, a Tennessee case, is a decision by the Court of Chancery Appeals, and was delivered on May 13, 1899. Two years prior to that decision (May 17, 1897) the Court of Appeals of the Sixth Circuit, construing the Tennessee statute, held that (to quote the syllabus), "A State statute declaring it unlawful for any foreign corporation to do business or to acquire property in the State without first complying with the provisions of the statute, and imposing a fine for violation thereof (Acts Tenn. 1891, Ch. 122) does not render invalid, in the hands of an innocent purchaser for value, negotiable paper taken by a foreign corporation without complying with the statute, nor render unenforceable a trust deed securing the same on property in the State." *Lauter* v. *Jarvis-Conklin Mtg. Trust Co.*, 85 Fed. 895. That case was before Taft and Lurton, circuit judges, and Hammond, who was the district judge for the Western Dis-

trict of the State, the appeal having been taken from the Eastern District of Tennessee.

In 1915, the question was presented to the Supreme Court of the State in the case of *Edwards* v. *Hambly Fruit Products Co.,* 180 S. W. 163. The court declared, to quote the syllabus, ''Under negotiable instruments law, Acts 1899, chapter 94, section 60, providing that the maker of a negotiable instrument, by making it, engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to endorse, the innocent holder of a negotiable note may recover thereon, though the payee was a foreign corporation, which, though required to do so, had not complied with the law in respect to filing a copy of its charter of incorporation.''

The opinion refers to the case of *First Nat. Bank* v. *Caughron, supra,* and, without approving it, disposes of it by saying that whatever may have been the rights of an innocent holder of a negotiable note prior to the passage of the negotiable instruments law in that State (Acts 1899, chapter 94), section 60 of that act gave the right to sue. If the negotiable instruments law has any controlling effect, it may be said that we have the same law and section 60 of our act is identical with section 60 of the Tennessee statute. Act No. 81, Acts 1913, page 260.

I therefore dissent, and am authorized to say that Mr. Justice WOOD concurs in the views here expressed.