Murray Tool & Supply Company *v.* State,
Use Crawford County.

4-6673                                          159 S. W. 2d 71

Opinion delivered March 2, 1942.

*Fist, Duberry & Bragg* and *R. S. Wilson,* for appellant.

*Ray Blair* and *Carl K. Creekmore,* for appellee.

Griffin Smith, C. J. A corporation designated Arkansas Oil and Mining Company prospected in Crawford county for oil. Another corporation—Murray Tool and Supply Company—is domiciled at Tulsa, Okla.

In an action brought by the prosecuting attorney under authority of §§ 2247 to 2250, it was alleged that the Oklahoma corporation transacted business in this state without having complied with statutory requirements. A penalty of $2,500 was sought. The cause was tried by the circuit judge without a jury. Judgment was for $1,000.

It is undisputed that appellant supplied not less than 1,500 feet of casing for the Crawford county well. The defending corporation contends it had a contract to furnish the casing for a rental charge of $150, with the right to reclaim it if the hole did not produce oil. In addition, assignment of royalty interests owned by Arkansas Oil and Mining Company was to have been made. This contract, according to appellant, was consummated and evidenced by a writing, but was not signed because of difficulty in securing a meeting of the board of directors.

Oil was not produced, and Arkansas Oil and Mining Company became insolvent. It is conceded by appellant that it employed W. M. Hall to "pull" the casing. Hall assumed duties, according to witnesses for appellee, not directly connected with preservation or recovery of the casing, covering a period of thirty-six days.

Ray Everett, appellant's president, testified the interest his company would acquire was one-tenth of the oil, in the event of production. Hall was sent to "keep an eye" on the casing and to prevent improper use. Everett made three or four trips to check on its use.

There is substantial proof that Hall's activities were not confined to the casing transaction. Equipment was sent from Oklahoma for salvage purposes, and was used under directions of appellant. The Oil and Mining Company had purchased about $1,400 worth of machinery from appellant, some of which, according to Everett, had been paid for.

J. E. Dotson, on behalf of appellee, testified that Everett offered to supply the Oil and Mining Company with anything needed, and pay would be "oil or nothing."

We think the proof is susceptible, in part, of the construction placed upon it by appellee: appellant did not rely upon $150 as rental for the casing; it furnished other items of equipment, and compensation was to be in oil. But does this, as a matter of law, place the Oklahoma corporation in the attitude of doing business in Arkansas? The contract appears to have been made in Oklahoma. Certainly the writing was an Oklahoma contract.

The holding in *Clark* v. *The J. R. Watkins Medical Company,* 115 Ark. 166, 171 S. W. 136, was that the Act of 1907, p. 774, does not apply to a foreign corporation engaged solely in interstate commerce, but that it does apply where such corporation employs an agent who does business for it within the state.

A liberal construction was given Art. 12, § 11, of the constitution, and Acts of 1887, § 1, p. 234, when it was held in *Florsheim Bros. Dry Goods Co.* v. *Lester,* 60 Ark. 120, 29 S. W. 34, 27 L. R. A. 505, 46 Am. St. Rep. 162, that the taking of a single mortgage by a foreign corporation to secure a past-due debt, with no apparent intention to transact other business within the state, was not "doing business" within the meaning of the statute and the constitutional prohibition.

In *Sunny South Lumber Co.* v. *Neimeyer Lumber Co.,* 63 Ark. 268, 38 S. W. 902, it was said in a headnote: "A foreign corporation, engaged in its business of buying and selling lumber, to which a citizen of Arkansas becomes indebted in another state, may secure such debt by taking a mortgage on personal property in this state, without first appointing an agent in Arkansas, as the taking of a mortgage under such circumstances is not 'doing business' in the state, within the statute relating to foreign corporations."

In *White River Lumber Co.* v. *Southwestern Improvement Association,* 55 Ark. 625, 18 S. W. 1055, it was held that in a suit by a foreign corporation to enforce a contract for the lease of land situated in this state, it was not a defense that the corporation had done business in the state, and had not complied with the Act of April 4, 1887, unless it should appear that the contract sued on was made in this state, or in the course of business done here. Mr. Justice HEMINGWAY, who wrote the court's opinion, said:

"The law affords no relief upon contracts made against its prohibition; but relief is withheld, not because the plaintiff has done illegal acts, but because the cause of action is a part of or connected with them. Although the plaintiff may have violated provisions of the law in particular transactions, it does not refuse relief upon a

contract not connected with or a part of the prohibited acts.''

In *Stone* v. *Riggs,* 163 Ark. 211, 259 S. W. 412, the question was whether legal effect of a written agreement was such that the Butler-McMurray Drilling Company, ''or the members thereof,'' became associated in business as partners with Alphonzo Riggs and William Pautz. The second headnote to this case is: ''An agreement between two persons interested in developing oil lands and the owners of a drilling outfit, which required the owners of the outfit to deliver it for use in the drilling of wells, and that they should receive one-eighth in the leases, did not render the owners partners with those interested in the development of the wells.''

This case deals with an alleged partnership, and does not, of course, come within the penalty statute; but it is authority for the proposition that a contract wherein personal property was let on consideration that compensation should be in oil did not create a relationship upon which liability of other parties could be predicated.

The general rule, as stated by editors of Corpus Juris, vol. 14-A, ''Corporations,'' § 3977, is that when a foreign corporation transacts some substantial part of its ordinary business in a state, it is ''doing business'' therein, within the meaning of penal statutes.

Because the statute is highly penal it should not be invoked except in cases where the evidence warrants a belief that the corporation is, in fact, doing business within the state. Accepting oil leases and relying upon expectant production for compensation under a contract made in Oklahoma is not a transaction detrimental to public welfare. At most the Oklahoma corporation was only looking after development of property in which it had an interest in expectancy, and the activities of Hall were nothing more than precautionary supervision in respect of personal property let to Arkansas Oil and Mining Company on terms that might, or might not, produce returns. It was a speculative venture carried out pursuant to an Oklahoma contract.

The judgment is reversed, and the cause is dismissed.