5-3793                                            398 S. W. 2d 221

Opinion delivered January 24, 1966

*Warner, Warner, Ragon & Smith,* for appellant.

*Harper, Harper, Young & Durden,* for appellee.

JIM JOHNSON, Justice. This appeal involves two apparently conflicting Arkansas statutes.

Appellee George Hernreich, operator of a jewelry store in Fort Smith, executed three promissory notes payable to W. F. Sebel Co., Inc., a foreign corporation. Sebel Company, a wholesaler of diamond jewelry, was not qualified to do business in Arkansas. Hernreich had been doing business with Sebel Company for two decades prior to this litigation. The testimony reflects that this was their manner of doing business: Sebel Company's salesman, Sam Leibson, with his entire stock of diamond jewelry, would call on Hernreich at his Fort Smith store. Hernreich would select and receive diamond jewelry from Leibson's stock. Hernreich would sign one

or more promissory notes representing the purchase price of the jewelry, which notes Leibson would then forward to Sebel Company's home office in Los Angeles. (Unknown to Hernreich, Sebel Company would then discount the notes with appellant, Pacific National Bank.) As Hernreich sold the diamond jewelry, he apparently put the money aside toward payment of the promissory note on that jewelry, and if he sold less than the amount of the note, shortly before the note was due Sebel Company sent him their check for the difference (*i.e.*, if Hernreich had given a note for $5,000 and sold only $4,000, Sebel Company would send Hernreich its check for $1,-000.). When each note was due and sent to a Fort Smith bank for payment, Hernreich would pay the note with the proceeds of what he had sold and Sebel Company's check.

On February 20 and March 14, 1963, appellee executed three notes totaling $10,611.70, due in three to five months. These notes were sent to Sebel Company by Leibson and negotiated to appellant bank a few days later. Shortly thereafter Sebel, the principal owner of Sebel Company, died and the corporation was dissolved. When the notes became due and were presented for payment at a Fort Smith bank, appellee refused to pay them.

Appellant filed suit against appellee in Sebastian Circuit Court on January 9, 1964, for the principal sum plus interest and costs, alleging that appellant was the holder in due course of the notes and entitled to judgment. Appellee answered, admitting execution of the notes, denying that appellant was a holder in due course, and alleged that Sebel Company was a California corporation not qualified to do business in Arkansas and was, therefore, without power to enter into an enforceable contract in Arkansas, and asked for summary judgment dismissing the complaint. After depositions and the affidavit of appellant's vice president were taken, appellant filed a motion for summary judgment alleging that there was no genuine issue of fact and that

appellant was entitled to judgment as a matter of law. The trial court granted appellee's motion for summary judgment, from which comes this appeal.

Appellant contends that a holder in due course is entitled to summary judgment against the maker of negotiable notes under the undisputed facts, even though the payee was a non-qualified foreign corporation, and the trial court erred in granting appellee's motion for summary judgment and overruling appellant's.

For reversal, appellant cites Ark. Stat. Ann. § 85-3-305 (Add. 1961) which says:

"To the extent that a holder is a holder in due course he takes the instrument free from
(1)    all claims to it on the part of any person; and
(2)    all defenses of any party to the instrument with whom the holder has not dealt except
    (a)    infancy, to the extent that it is a defense to a simple contract; and
    (b)    such other incapacity, or duress, or illegality of the transaction as renders the obligation of the party a nullity; and
    (c)    such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and
    (d)    discharge in insolvency proceedings; and
    (e)    any other discharge of which the holder has notice when he takes the instrument."

For affirmance of the trial court, appellee cites Ark. Stat. Ann. § 64-1202 (Repl. 1957):

"Any foreign corporation which shall fail to comply with the provisions of this act, and shall do business in this State, shall be subject to a fine of not less than $1,000, to be recovered before any court of competent jurisdiction, and all such fines so recovered shall be paid into the general revenue fund

of the county in which the cause of action shall accrue, and it is hereby made the duty of the prosecuting attorneys to institute said suits in the name of the State, for the use and benefit of the county in which the suit is brought, and such prosecuting attorney shall receive as his compensation one-fourth of the amount recovered, and as an additional penalty, any foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid, cannot make any contract in the State which can be enforced by it either in law or in equity, and the complying with the provisions of this act after the date of any such contract, or after any suit is instituted thereon, shall in no way validate said contract."

The legislature has in the past encouraged free negotiability of commercial paper and early passed the Uniform Negotiable Instrument Law. This was fairly recently replaced with the Uniform Commercial Code, of which § 85-3-305, *supra,* is a part. On the other hand, the legislature passed the highly penal statute, § 64-1202, *supra,* on foreign corporations to protect our citizenry.

In Dean J. S. Waterman's fine article, "Notes Payable to an Unlicensed Foreign Corporation," (5 Law School Bull. 12), he concluded: ". . . , Arkansas is perhaps the sole jurisdiction which denies to holders in due course the right to recover from the maker under a statute on unlicensed foreign corporations, such as ours, which does not declare the instrument void."

The cases cited by appellee deal with attempted enforcement of assigned contracts of unlicensed foreign corporation, even *Hogan* v. *Intertype Corporation,* 136 Ark. 52, 206 S. W. 58, on which Dean Waterman relied for his conclusion. It is settled law that assignees can receive no better rights than their assignors had. The strong language in the *Hogan* case is excellent—but it is dicta. Thus it is apparent that this is really the first

time this court has had occasion to rule directly on the question presented.

To reverse this case and permit enforcement of the notes here sued on would in effect repeal our penal statute prohibiting unlicensed foreign corporations from doing business in this state. Weighing the possible hampering of negotiability of commercial paper made in Arkansas against permitting fly-by-night foreign corporations to prey unimpededly on our citizens, we conclude that the better rule is that expressed in the *Hogan* case dicta:

> "It was necessarily the intention of the Legislature to render any paper growing out of a transaction of this character defective so that it could not fall into the hands of an innocent purchaser and be enforced in this State. . . . [T]he notes evidenced a contract made by the corporation in violation of the statute laws of this State. The defect was inherent in the notes. . . , and therefore a subsequent purchaser must take notice of the defect."

The effect of this adoption is to render a transaction of this kind not merely unenforceable but void ab initio. Accordingly, there can be no holder in due course here of a negotiable instrument arising out of this illegal transaction.

Affirmed.

McFADDIN, J., dissents.

COBB, J., not participating.

ED. F. McFADDIN, Justice, dissenting. I vote to reverse the Circuit Court judgment because I am of the opinion that the appellant should prevail; and here are the reasons for my vote.

W. F. Sebel, Inc. was a nondomesticated foreign corporation. Under Ark. Stat. Ann. § 64-1202 (Repl.

1957) the notes that Hernreich executed to Sebel were not *void*. Rather, Sebel, as a nondomesticated foreign corporation, was denied the right to use the Arkansas State Courts to collect the notes. Sebel could have enforced the notes in the United States District Court in Arkansas if the jurisdictional amounts had been great enough. *Citizens Bank* v. *Shaw*, 293 F. 63;[1] and *Pellerin* v. *Hogue*, 219 F. Supp. 629. In *Waxahachie Medicine Co.* v. *Daly*, 122 Ark. 451, 183 S. W. 741, we said:

> "Our court has held that the failure of a foreign corporation to comply with the requirements of the statutes prescribing conditions upon which foreign corporations may enter and do business within the State did not render its contracts void, . . ."

All our statute (§ 64-1202) does is to deny to the nondomesticated foreign corporation the right to use the Arkansas State Courts. If the Legislature had wanted to make the notes void it could have done so in appropriate language, just as usurious notes are void, even in the hands of a bona fide holder.

Since the notes were not void, then, under Ark. Stat. Ann. § 85-3-305 (Add. 1961), the appellant, as the conceded bona fide holder (for value before maturity and without notice), took the notes free of the claim of voidability that Hernreich could have made against Sebel Co. The statute just cited says that the holder in due course ". . . takes the instrument free from . . . (2) all defenses of any party to the instrument with whom the holder has not dealt except . . . (b) . . . illegality of the transaction as renders the obligation of the party a nullity." That the notes were not a nullity is shown by *Citizens Bank* v. *Shaw, supra;* so, under the plain wording of our statute (a part of the Uniform Commercial Code adopted in 1961), these notes are enforceable in

---

[1] This case thoroughly establishes that notes like those in question are not void. The case has been cited in *Ockenfels* v. *Boyd*, 297 F. 614 (8th Cir.); *Shaw* v. *Citizens Bank*, 10 F. 2d 315 (8th Cir.); and in annotations in 132 A.L.R. 473 and 133 A.L.R. 1179.

the hands of the appellant. This point is made crystal clear in the comment following Ark. Stat. Ann. § 85-3-305 (Add. 1961) wherein, in speaking of paragraph (b) of subsection (2), as above quoted, the comment says:

"5. Paragraph (b) of subsection (2) is new. It covers mental incompetence, guardianship, ultra vires acts or *lack of corporate capacity to do business,* any remaining incapacity of married women, or any other incapacity apart from infancy. Such incapacity is largely statutory. Its existence and effect is left to the law of each state. If under the local law the effect is to render the obligation of the instrument *entirely null and void, the defense may be asserted against a holder in due course.* If the effect is merely to render the obligation *voidable* at the election of the obligor, *the defense is cut off.*" (Emphasis supplied.)

When the Legislature adopted the Uniform Commercial Code with this comment before it, the law had been settled at that time that notes such as these were not null and void, but merely voidable; and the comment says that, under such circumstances, "the defense is cut off."

The Majority Opinion quotes from Dean Waterman's article which appeared in Volume 5 of the Law School Bulletin in December 1936. Dean Waterman there says:

"As pointed out, Arkansas is perhaps the sole jurisdiction which denies to holders in due course the righ to recover from the maker under a statute on unlicensed foreign corporations, such as ours, which does not declare the instrument void."

Since 1936 the Arkansas Legislature has adopted the Uniform Commercial Code; and the logical effect of that adoption is to remove Arkansas from "the sole jurisdiction," and put Arkansas with the great weight of author-

ity in other jurisdictions. This is particularly important in matters of commercial paper.

The Majority Opinion concedes that the Hogan case was the case of an assignee, and admits that we have no case in Arkansas directly in point. Here is the language in the Majority Opinion:

> "Thus it is apparent that this is really the first time this court has had occasion to rule directly on the question presented."

In view of the adoption of the Uniform Commercial Code, as above quoted, and in the light of the cases in all other jurisdictions, I am thoroughly of the opinion that the appellant had the right to maintain this suit in the State courts. The Majority Opinion is reading something into the law that is not there, because it is in effect saying that the notes are absolutely void; and that is not what Ark. Stat. Ann. § 64-1202 (Repl. 1957) says.

For the reasons herein stated, I respectfully dissent.