WORTHEN BANK & TRUST COMPANY *v.* UNITED UNDERWRITERS SALES CORPORATION OF AMERICA ET AL

5-5640                                    474 S.W. 2d 899

Opinion delivered November 22, 1971
[Rehearing denied January 24, 1972.]

*Wright, Lindsey & Jennings,* for appellant.

*Pope, Pratt, Shamburger, Buffalo & Ross,* for appellees.

J. FRED JONES, Justice. This is an appeal by Worthen Bank & Trust Company from an adverse decision of the Pulaski County Circuit Court in a suit by Worthen on some promissory notes.

United Underwriters Sales Corporation of America, a foreign corporation, obtained a loan from Worthen and gave its note direct to Worthen. James M. Williams, Joe Mangiapane and Charles Selman gave their separate personal notes to United and United assigned these notes to Worthen as collateral security for the payment of its note direct to Worthen. Williams, who was the president of United, also executed a personal guaranty agreement as additional security for the payment of the loan by United. United defaulted on the payment of its note and Worthen sued on all the notes as well as the guaranty agreement. Williams had died in the meantime and his estate was made a party defendant on the guaranty agreement.

A jury was waived and the case was tried before the judge sitting as a jury. The court found that United is a foreign corporation organized under the laws of the State of Virginia, and that it was doing business in the State of Arkansas at the time its renewal note to Worthen was executed on February 28, 1968. The

court further found that United was not authorized to do business in the State of Arkansas and that Worthen is not entitled to recover from the defendants, Joe Mangiapane and Charles Selman.

A joint and several judgment was entered in favor of Worthen against United on its note direct to Worthen and against Williams' estate on the separate personal guaranty executed by Williams, but in paragraph three of the judgment the court recited: "The promissory notes of defendants Joe Mangiapane and Charles Selman which were assigned to plaintiff are unenforceable by plaintiff and void *ab initio.*" On appeal to this court Worthen relies on the following points for reversal:

"The trial court erred in entering a judgment in favor of defendants Joe Mangiapane and Charles Selman because:

A. The amended answer of Charles Selman and Joe Mangiapane was struck by the trial court and these defendants thereby failed to affirmatively allege or assert the provisions of Ark. Stats., § 64-1201 et seq., or the failure of United to qualify in Arkansas as a defense.

B. There is no proof in the record that United was required to qualify to do business in the State of Arkansas.

The promissory notes executed by defendants Joe Mangiapane and Charles Selman are not void and plaintiff is entitled to maintain an action and recover thereon against the obligors.

The decision of the Supreme Court of Arkansas in *Pacific National Bank* v. *Hernreich,* 240 Ark. 114, 398 S. W. 2d 221 (1966) should be (a) overruled, or (b) judicially limited to its facts, or (c) distinguished from the instant case and the judgment of the trial court reversed."

We are unable to fully treat the first two points relied on by Worthen for the reason that we are unable

to tell from the record before us what disposition the trial court finally made of the amended answer of Selman and Mangiapane, and we are unable to tell from the record before us whether United was doing business in the State of Arkansas. We find no evidence in the record that it was, and we find no evidence in the record that it was not.

As to the amended answer to the complaint, the record indicates that the complaint was filed on February 27, 1970; that on March 23 and March 25 respectively, Selman and Mangiapane filed their separate answers simply denying the material allegations stated in the complaint and reserving their right to plead further in the matter. The record indicates that the case was set for trial on November 23, 1970, and on that date Selman and Mangiapane filed an amended answer reasserting their general denial to the original complaint and alleging several affirmative defenses, including one set out in paragraph five of the amended answer as follows:

> "Answering further these defendants state that the instruments labeled Exhibits 'C' and 'D' are void for the reason the United Underwriters Sales Corporation of America is a foreign corporation which is not and has never been authorized to do business in the State of Arkansas under the provisions of Arkansas Stats. Annotated § 64-1201, et seq. Therefore, said instruments are unenforceable under the provisions of said statute."

Ark. Stat. Ann. § 64-1201 (Repl. 1966) sets out the acts and procedure to be done and followed by foreign corporations before they may do business in the State of Arkansas, and § 64-1202 prescribes the penalties for doing business in the state without qualifying under § 64-1201. Section 64-1202 provides a fine for non-compliance and in addition provides as follows:

> ". . . as an additional penalty, any foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid, cannot make any contract in the State which can be en-

forced by it either in law or in equity, and the complying with the provisions of this act after the date of any such contract, or after any suit is instituted thereon, shall in no way validate said contract."

Returning now to the action taken by the trial court relative to the amended answer; when the case was called for trial, the record reveals in-chambers proceedings as follows:

"THE COURT: I think the record should reflect that an Amended Answer of Charles Selman and Joe Mangiapane was filed in the office of the Circuit Clerk on the morning of November 23, 1970; that the case was set for trial on said date. That it is the Court's understanding that Mr. Rather is moving that the amended pleading be stricken and the Court grants such motion.

MR. BUFFALO: If the Court is sustaining the motion I would have to move for a continuance. These are the defenses that these men are entitled to bring out.

THE COURT: You mean by reason of the filing of the Answer this morning?

MR. BUFFALO: Frankly I'm surprised that Mr. Rather is objecting because of the discussion we had last week.

THE COURT: If he told me—this Court—that he was not prepared to defend on these new issues I think of my own motion would say that lawyers must—and I am not criticizing you but this is true with many lawyers—they must join the issues and be prepared to try the cases on the day they are set. We have an Answer filed back in March and here it is November and if Courts don't assert themselves and cause people, litigants, to litigate cases on the day set the public generally has every right to be critical whether it be criminal or civil.

MR. RATHER: I want to make sure because I don't want to be unfair and I don't want to be in the position of taking advantage, so let me say this. I will grant as I recall Friday we talked about this on the telephone and did you tell me at that time that you intended to file an Amended Answer?

MR. BUFFALO: I am not upset.

MR. RATHER: Okay.

[Reporter asked to get off record at this point as discussion continues between counsel.]

MR. RATHER: Your Honor, we have one thing further and that is I would like to move the Court to strike from my Complaint the second sentence in the first paragraph of the Complaint which states defendant United Underwriters Sales Corporation of America is a foreign corporation with its principal place of business in Norfolk, Virginia.

MR. BUFFALO: We object to any such amendments as that.

MR. RATHER: That's not a necessary allegation. All of these jurisdictional allegations as far as I know are not necessary in any pleading and it certainly doesn't give the Court any jurisdiction in this case and I move to strike that allegation.

THE COURT: All right. I am not passing on it. He's made his record. I don't know where we're going on any of it. Take that under advisement along with all of the other facets."

During the course of the trial there was placed in evidence as defendants' exhibit 2, a certificate from the Secretary of State of Arkansas certifying that United Underwriters Sales Corporation of America is not a qualified corporation, not having met the requirements governing all the corporations of this state, and that

said corporation has never been issued a certificate of authority to do business in Arkansas.

At the close of all the evidence, the record recites as follows:

"MR. BUFFALO: I would like to make one motion at this time. I'd like to ask that the Answers be amended to conform to the proof entered into evidence today.

MR. RATHER: We have no objection to that with the exception of the fact that you have previously ruled on the Amended Answer and we would request the Court to continue with that ruling as applies to paragraph 5 of the Amended Answer.

THE COURT: Regardless of what is in the pleadings, now by ageement we have got an exhibit captioned Defendant's Exhibit 2 which supplies proof which supports and substantiates the allegations so I really think we're dealing in technicalities now."

Worthen contends that the trial court struck the amended answer. But, Worthen argues that even if it waived its objections to the first four paragraphs of the amended answer, it is clear that the court did not change its initial ruling concerning paragraph five of the amended answer. Selman and Mangiapane argue just as earnestly, that it is clear the trial court regarded the pleadings as amended to conform to the proof offered in evidence without objections. Perhaps the trial court's intentions would be much clearer to us if we knew what conclusions were reached in the off-record discussion, but from the trial court's comments following the off-record discussion as well as the court's comment in connection with the motion to conform, it is not clear to us what the court intended.

We have not overlooked the exhibits indicating that mail was directed to United at an address in West

Memphis, Arkansas, nor have we overlooked some evidence tending to indicate that some of the notes as well as some alleged "buy back" agreements were executed in Arkansas. This court has said that a corporation is doing business in the State of Arkansas within the meaning of the above statute when it transacts some *substantial* part of its *ordinary* business in this state, and that since the statute is highly penal it should not be invoked except in cases where the evidence warrants a belief that the corporation is, in fact, doing business within the state. *Murray Tool & Supply Co.* v. *State, Use Crawford County*, 203 Ark. 874, 159 S. W. 2d 71. We are simply unable to find any evidence in the record from which we can determine whether United was or was not doing such business in Arkansas so as to bring it within the purview of §§ 64-1201 and 64-1202, *supra.*

Since we must remand this case because of the insufficiency of record as above set out, we are unable to pass on the main issue as to whether the two notes signed by Selman and Mangiapane were void *ab initio.* We conclude, however, that since the appellant's third point will likely arise on retrial, the question it raises should be answered now. The appellant, Worthen, argues that we should reverse or modify our opinion in *Pacific Nat'l Bank* v. *Hernreich*, 240 Ark. 114, 398 S. W 2d 221, or that we should at least limit our holding to the facts of that particular case. The appellees argue that our holding in *Hernreich* is sound and that it should be reaffirmed in this case.

As far back as 1918 in the case of *Hogan* v. *Intertype Corp.*, 136 Ark. 52, 206 S. W. 58, this court said:

"Under section 2, Act 313, Acts 1907, a contract made by a foreign corporation without complying with the laws can not be enforced by it either in law or in equity. It is insisted by appellee that the enforcement thereof applies to the corporation taking the paper and not to its assignee. In this case, the plaintiff is an assignee of the original seller or taker of the paper. This very narrow and limited construction of the statute would render it nugatory. Under

this construction all foreign corporations doing business in this State would likely escape the penalty imposed by the statute. It was necessarily the intention of the Legislature to render any paper growing out of a transaction of this character defective so that it could not fall into the hands of an innocent purchaser and be enforced in this State. We think the notes and mortgage evidenced a contract made by the corporation in violation of the statute laws of the State. The defect was inherent in the notes and mortgage, and therefore a subsequent purchaser must take notice of the defect."

Our holding in *Hogan* was affirmed the following year in *Dean v. Caldwell*, 141 Ark. 38, 216 S. W. 31, where we said:

"Under our statutes, not only the offending corporation, but its assignee is prohibited from maintaining suit in this State without having first complied with the laws of the State. *Hogan* v. *Intertype Corporation*, 136 Ark. 52."

In the 1924 case of *Republic Power & Service Co. v. Gus Blass Co.*, 165 Ark. 163, 263 S. W. 785, oil lease contracts with an unqualified foreign corporation were involved and in that case we said:

". . . The statute, however harsh its terms may be, is, as we have already seen, a valid and enforceable act. It provides, in express terms, that any foreign cororation which has failed to file its articles of incorporation or certificate as provided, cannot make any contract in this State which can be enforced by it, either in law or in equity.

Now it is evident that the plaintiff could not recover without introducing the contract under which it claims in evidence. * * * To allow it to recover by introducing in evidence a contract *absolutely void under the statute* would defeat the main purpose of the statute." (Emphasis added).

It was not until 1966, in the case of *Pacific Nat'l Bank* v. *Hernreich,* 240 Ark. 114, 398 S. W. 2d 221, that we said in unequivocal language, that a contract made in violation of the statute is "not merely unenforceable but void *ab initio."* In *Hernreich* we adopted the dicta expressed in *Hogan, supra,* in the following language:

> " 'It was necessarily the intention of the Legislature to render any paper growing out of a transaction of this character defective so that it could not fall into the hands of an innocent purchaser and be enforced in this State. . . . [T]he notes evidenced a contract made by the corporation in violation of the statute laws of this State. The defect was inherent in the notes . . ., and therefore a subsequent purchaser must take notice of the defect.' "

We then continued in *Hernreich* as follows:

> "The effect of this adoption is to render a transaction of this kind not merely unenforceable but void ab initio. Accordingly, there can be no holder in due course here of a negotiable instrument arising out of this illegal transaction."

Our holding in *Hernreich* was reaffirmed as recent as March 29, 1971, in *Union Planters Nat'l Bank of Tenn.* v. *Moore,* 250 Ark. 272, 464 S. W. 2d 786, wherein we said:

> "Little need be said about the fact that the provisions of Ark. Stat. Ann. §§ 64-1201—02 (Repl. 1966) are also applicable to the assignees of such an unenforceable contract. In *Pacific National Bank* v. *Hernreich,* 240 Ark. 114, 398 S. W. 2d 221, this court flatly held that there can be no holder in due course of a negotiable instrument arising out of a transaction which was illegal because an unlicensed foreign corporation was without power to enter into an enforceable contract in Arkansas. In so holding, we said:
>
> 'It is settled law that assignees can receive no better rights than their assignors had. The strong lan-

guage in the *Hogan* case is excellent—but is dicta. Thus it is apparent that this is really the first time this court has had occasion to rule directly on the question presented.

To reverse this case and permit enforcement of the notes here sued on would in effect repeal our penal statute prohibiting unlicensed foreign corporations from doing business in this state.'

We held that a transaction of this nature is not merely unenforceable but void *ab initio*."

We reaffirm our holding in *Hernreich* and hold that a contract made in violation of Ark. Stat. Ann. §§ 64-1201—02 (Repl. 1966) is not merely voidable or unenforceable by the offending corporation, but it is void *ab initio* insofar as the foreign corporation or its assignee is concerned. By the use of the phrase "void *ab initio*" we do not mean to imply that an unqualified corporation doing business in Arkansas may avoid its own liability under its contract made in this state. The purpose of the statute is not to permit such corporations to *avoid* liability under such contracts, but the purpose of the statute is to prevent such corporations from *enforcing* liability under such contracts. The purpose of our use of the phrase "void *ab initio*" is to insure against possible benefits to the offending corporation, by assignment or otherwise, and to put prospective purchasers or assignees on notice that such contracts, even when negotiable or valid on their face, are void and unenforceable even in the hands of what would otherwise appear to be a bona fide purchaser for value.

Reversed and remanded.

BYRD, J., not participating.