**UNCLE BEN'S, INC.**

v.

**Dale CROWELL, Leo Johnson, Don Arnold, Bruce Arnold, Roth Bush, Lloyd Hudson, Eddie Burris, Verlon Moody and Jerry Moody.**

**No. J–C–78–113.**

United States District Court,
E. D. Arkansas,
Jonesboro Division.

Jan. 17, 1980.

Lester & Shults, Little Rock, Ark., for plaintiff.

Frierson, Walker, Snellgrove & Laser, Jonesboro, Ark., for defendants Crowell, Arnold, Arnold and Burris.

Branch & Thompson, Paragould, Ark., for defendant Leo Johnson.

William David Mullen, Walnut Ridge, Ark., for defendant Roth Bush.

Lightle, Beebe & Raney, Searcy, Ark., for defendants Moody and Moody.

Defendant Lloyd Hudson was never served and was not active in lawsuit.

## MEMORANDUM AND ORDER

OVERTON, District Judge.

This diversity case involving suits on contracts for the sale of rice is presently before the Court for decision on motions by defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For purposes of resolution of the motion the parties have agreed the matter may be submitted upon the pleadings and exhibits attached thereto, answers to interrogatories and affidavits.

The defendants, Arkansas farmers or farm landlords, contend that the contracts for the sale of rice relied upon by plaintiff are void because the plaintiff, a corporation, was "doing business" in Arkansas at the time the contracts were made without having first qualified to do business in the state as required by *Ark.Stat.Ann.* § 64–1201 (Cum.Supp.1979). *Ark.Stat.Ann.* § 64–1202 (1966) provides in pertinent part:

[A]ny foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid, cannot make any contract in the State which can be enforced by it either in law or in equity, and the complying with the provisions of this act after the date of any such contract, or after any suit is instituted thereon, shall in no way validate said contract.[1]

---

1. The Arkansas Supreme Court has referred to this statute as a "door-closing" statute, since it closes the State's courthouse doors to non-qualifying foreign corporations seeking to enforce contracts made within the State. *United Press International, Inc. v. Hernreich*, 241 Ark. 33, 406 S.W.2d 322 (1966). Although this action was commenced in a federal forum, under

The relevant facts disclosed by answers to interrogatories and affidavits are undisputed.

Uncle Ben's, Inc., the plaintiff, is a Delaware corporation with its principal place of business in Houston, Texas. Although a "foreign corporation", it admittedly did not comply with *Ark.Stat.Ann.* § 64–1201. The company engages in the nationwide business of purchasing rough rice and processing it into final consumer products. The final products are sold on the national and international markets.

During 1977, the year the involved contracts were executed, Uncle Ben's employed salaried rice buyers in the rice producing states of Texas, Louisiana, Mississippi, Missouri and Arkansas, whose sole responsibility was to purchase rough rice from farmers for shipment to Uncle Ben's milling facility in Houston, Texas. Uncle Ben's did not withhold any sums for Arkansas state income taxes from the Arkansas buyers' salaries.

The rice buyers effected purchases under two kinds of contracts: (1) written "forward" contracts[2] executed with farmers early in the growing season; and (2) oral agreements to purchase rice from farmers or grain storage elevators immediately before or after the harvest of the crop.

During 1977, Uncle Ben's employed two full-time rough rice buyers in Arkansas, both of whom are Arkansas residents. There was not, however, a business office, telephone listing or support staff for the buyers. The plaintiff had two other salaried employees who were Texas residents who spent approximately 10 to 14 days in Arkansas in 1977 assisting the Arkansas resident buyers in soliciting forward contracts with Arkansas farmers for the purchase of rough rice.

The only business activity in Arkansas engaged in by plaintiff's employees was the purchase of rough rice from Arkansas farmers and grain elevators for shipment directly to Houston, Texas. During 1977, none of plaintiff's employees was involved in any intrastate purchases or sales of rice to local wholesalers or retailers. Transportation of rough rice purchased by plaintiff from Arkansas to its milling facility in Texas was handled according to an exclusive shipment contract between plaintiff and a Texas trucking company.

Although the contracts involved in this suit are 1977 contracts, Uncle Ben's engaged in purchases from Arkansas farmers in the preceding years, 1975 and 1976. The volume of business between Uncle Ben's and Arkansas farmers for the three years was:

1975—76 contracts which represented a purchase of 319,577 cwt., or the yield of approximately 7,886 acres of land for a total purchase price of $3,005,302.00.

1976—76 contracts which represented a purchase of 418,737 cwt., or the yield of approximately 10,339 acres of land for a total purchase price of $2,851,599.00.

1977—122 contracts for the purchase of 416,385 cwt., or the yield of approximately 9,700 acres of land for a total purchase price of $2,985,480.00.

The quantity of rice to be bought and the price to be paid under each contract were determined by the plaintiff's Houston office employees. These employees monitored changing national and regional rice market conditions and then relayed the decisions to the Arkansas buyers.

The solicitations of sales, execution of the contracts, and payments under the con-

---

the holding in *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), a federal court presiding over a case brought under diversity jurisdiction must give effect to such a statute, unless to do so contravenes the United States Constitution or a federal statute.

**2.** "Forward" contract is a generic term common to the marketing of agricultural crops.

The contracts "provide a ready way for the cotton farmer to protect himself against a price deadline by ensuring that he will be able to sell his crop at a sufficient price to cover his expenses. The merchant who has contracted to buy the cotton from the farmer must in turn protect himself against market fluctuations." *Allenberg Cotton Co. v. Pittman*, 419 U.S. 2026, 95 S.Ct. 260, 264, 42 L.Ed.2d 195 (1974).

tracts were made in Arkansas. Insofar as the defendants were concerned the entire performance of the contract occurred in Arkansas. The rice was grown in Arkansas, delivered by the defendants at their storage facilities to Uncle Ben's trucking contractor in Arkansas, and, according to the contracts, title passed to Uncle Ben's upon acceptance of the rice or upon delivery of the rice by the farmers to the transportation contractor's trucks. After deliveries of rice were made to plaintiff, it was sometimes necessary for plaintiff to store the rice in Arkansas for varying periods of time before transporting it to Texas.

The plaintiff does not question that the facts recited are sufficient to meet the threshold requirements for application of the penalty provisions of Ark.Stat.Ann. § 64–1202 to the contracts at issue. In order for a contract to fall within the sanction of the statute, it must be demonstrated that the contracts were made by a non-qualifying foreign corporation which has "done business" in the State, and that the particular contracts in question were made in Arkansas. *National Surety Corp. v. Inland Properties, Inc.*, 286 F.Supp. 173 (E.D. Ark.1968). Uncle Ben's activities, when tested by the standards set by the Arkansas Supreme Court, clearly constitute "doing business" within the meaning of that phrase as used in the statute. *See Generally, Worthen Bank and Trust Co. v. United Underwriters Sales Corp.*, 251 Ark. 454, 474 S.W.2d 899 (1971), and *Union Planters National Bank v. Moore*, 250 Ark. 272, 464 S.W.2d 786 (1971). When a foreign corporation transacts "some substantial part of its ordinary business" in this state it is doing business for purposes of the Act. *Murray Tool and Supply Co. v. State*, 203 Ark. 874, 159 S.W.2d 71 (1942).

Uncle Ben's contends, however, that the defense created by Ark.Stat. Ann. § 64–1202 is only available to the defendants when the plaintiff's business activities are strictly intrastate in nature. Furthermore, Uncle Ben's argues that the contracts at issue are part of business activities which are interstate in nature and that application of the act to such activities is repugnant to the Commerce Clause of the Constitution. *U.S.Const. art.* I, § 8, cl. 3.

Although the state law of Arkansas is applied to determine the "threshold" application of the act to plaintiff's activities, characterization of the activity as "interstate commerce" for purposes of testing the validity of the application against the Commerce Clause is a question of federal law. *1A Moore's Practice* ¶ 0.305[3], at 3045 (2d ed. 1979). The text author properly states the rule as:

> The law to be applied is keyed to the nature of the issue before the court; if non-federal, state substantive law is applied; if a federal matter is before the court, federal law is applied.

In a number of early cases the United States Supreme Court established the doctrine that a foreign corporation engaged solely in interstate commerce cannot be required to qualify to do business in any state in which it conducts activity incidental to its interstate business. *Sioux Remedy Company v. Cope*, 235 U.S. 197, 35 S.Ct. 57, 59 L.Ed. 193 (1914); *International Text Book Company v. Pigg*, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678 (1910); *Crutcher v. Kentucky*, 141 U.S. 47, 11 S.Ct. 851, 35 L.Ed. 649 (1891). The right to demand and enforce payment for goods sold in interstate commerce is so essential to the orderly flow of commerce that the imposition of unreasonable conditions upon the right to freely engage in transactions is an unreasonable burden upon interstate commerce. R. Leflar, *American Conflicts Law* § 257 (3rd ed. 1977). Although an act such as *Ark.Stat. Ann.* § 64–1201, *et seq.* may be valid as to one set of facts, i. e., intrastate business activities; it may be invalid as applied to another state of facts, i. e., interstate business activities. *Dahnke-Walker Milling Co. v. Bondurant*, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239 (1921).

Therefore, the question for determination is whether the contracts between Uncle Ben's and the Arkansas farmers are the product of intrastate activities or merely the result of activities which are incidental

to the conduct of interstate business by Uncle Ben's.

The Supreme Court has had a number of occasions to define and discuss the nature of interstate commerce. The breath of interstate commerce is summed up in the language of *Furst v. Brewster,* 282 U.S. 493, at 497, 51 S.Ct. 295, at 296, 75 L.Ed. 478 (1931) where the Court stated:

> [A]ll interstate commerce is not sales of goods. Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce.

■ It is obvious that the transactions in this case are not intrastate activities simply because the contracts to purchase rice were executed in Arkansas or because the contracts themselves are fully performed in Arkansas. The "essential character" of Uncle Ben's activity must be examined to determine whether the contracts are merely component parts of an interstate transaction. *Dahnke-Walker Milling Co. v. Bondurant, supra.*

"Forward" contracts involving agricultural products are uniquely adapted to characterization as a component part of interstate activity. In *Dahnke* a Tennessee corporation brought suit in Kentucky against a Kentucky farmer who allegedly breached a contract for sale and delivery of a crop of wheat raised in Kentucky. The Tennessee corporation had not qualified to "do business" in Kentucky and was faced with a statute comparable to *Ark.Stat.Ann.* § 64–1202 when it attempted to recover for the breach. The company's only activity in Kentucky was the purchase of wheat for immediate shipment to its Tennessee mill for processing. The wheat was grown, sold and delivered in Kentucky by the farmer. The Court concluded that the local nature of the transaction with the farmer was not the critical circumstance; the important factor was the overall nature of the Tennes-

see company's transaction which was purchase and shipment in interstate commerce.

A more recent, and equally analogous case, is *Allenberg Cotton Co., Inc. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974). In that case, a Tennessee cotton merchant who failed to qualify to do business in Mississippi entered into a "forward" contract with a Mississippi farmer. The contract was negotiated through a Mississippi broker and contemplated delivery of the cotton in Mississippi where it would be classified and stored before the merchant would ship it to mills outside the state. The Court noted that the course of dealing demonstrated that once the farmer's cotton was sold it ". . . enters a long interstate pipeline. That pipeline ultimately terminates at mills across the country or indeed around the world, . . ." 419 U.S. 20 at 25, 95 S.Ct. 260 at 263. The farmers argued that delivery of the cotton to a warehouse, the passage of title and the fact that the cotton may rest in a warehouse pending completion of classification, turned the transaction into an intrastate one. The Court did find that delivery of the cotton to a warehouse, taken in isolation, is an intrastate transaction. The Court decided, however, that ". . . these fleeting events are an integral first step in a vast system of distribution of cotton in interstate commerce." *Id.* at 26, 95 S.Ct. at 264.

■ Applying the reasonings of *Dahnke* and *Allenberg Cotton Co., Inc.* to the business activities of Uncle Ben's, the Arkansas transactions can be comfortably characterized as component parts of interstate commerce. Uncle Ben's practice, established since 1975, was the purchase of rough rice for ultimate shipment to Texas for processing and ultimate sale on the national and international market. It can hardly be argued by the defendant-Arkansas farmers that anyone contemplated local consumption of their products. This is particularly true inasmuch as Arkansas is one of the leading rice producing areas in the country. The national nature of rice production and sale is persuasive argument in favor of

characterization of a "forward" contract of sale as interstate activity.[3]

An additional circumstance which persuades the Court that the contracts involved in this case are not purely intrastate transactions is the manner in which the purchase price is set for the rough rice. The solicitation price offered the Arkansas farmers is not based solely upon supply and demand in Arkansas. During the solicitation procedure, the soliciting agents are constantly given market prices from the Houston, Texas office. The fluctuations in offering prices depend upon national and regional changes as well as occurrences in Arkansas.

The defendants rely heavily upon the fact that Uncle Ben's employs two resident soliciting agents and that other employees were physically present in Arkansas to assist with solicitation offers. Reference is made by defendants to *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961) in which the Court characterized activities as intrastate because of the "localized" nature of some of the transactions and the fact that a number of employees were engaged in assisting with the local business of the non-qualifying company. This Court is not unmindful of the fact that a non-qualifying company, although engaging in an essentially interstate activity, can conduct sufficient activities which are local in nature so that it should properly be subject to state regulation. Obviously, if Uncle Ben's localized its business so that to function effectively it engaged in a wide variety of dealings with people in the community, it should be subject to local regulation. *See generally, Union Brokerage Co. v. Jensen*, 322 U.S. 202, 64 S.Ct. 967, 88 L.Ed. 1227 (1944).

The facts in this case do not, however, warrant that "localized" characterization. Uncle Ben's had no office in Arkansas, no Arkansas business address or telephone listing and engaged only in the business of soliciting contracts for the purchase of rough rice. The fact that Uncle Ben's may have taken delivery of the rice in Arkansas, stored it in Arkansas or made arrangements for its transport from Arkansas to another state does not change the essential nature of the interstate activity. *Bruhn's Freezer Meats of Chicago, Inc. v. United States Dept. of Agr.*, 438 F.2d 1332 (8th Cir. 1971). *See also, Ralli-Coney, Inc. v. Gates*, 528 F.2d 572 (5th Cir. 1976).

The fact that Uncle Ben's employed resident soliciting agents and some of its employees were physically present in the state are not sufficient circumstances to change the predominantly interstate nature of the rice processing business conducted by Uncle Ben's of which these contracts are a component part.

The defendants' motions for summary judgment are denied.

---

**3.** *Compare Shafer v. Farmers Grain Co.*, 268 U.S. 189, 45 S.Ct. 481, 69 L.Ed. 909 (1925). In *Shafer* the Court noted:

Through this buying and the shipping in connection with which it is conducted the wheat which North Dakota produces in excess of local needs—more than 125,000,000 bushels

a year—finds a market and is made available for consumption in other states where the local needs greatly exceed the production. Obviously therefore the control of this buying is of concern to the people of other states as well as to those of North Dakota. *Id.* at 200, 45 S.Ct. at 485.