JOHNNY'S PIZZA HOUSE, INC. *v.* Chester Paul HUNTSMAN and Sheila McCloud Huntsman

92-713                                          844 S.W.2d 320

Supreme Court of Arkansas
Opinion delivered December 21, 1992

*Billy J. Hubbell*, for appellant.

*Arnold & Streetman*, by: *James A. Hamilton*, for appellees.

STEELE HAYS, Justice. The trial court dismissed this action by Johnny's Pizza House, Inc., a foreign corporation, for its failure to comply with the Wingo Act, Ark. Code Ann. § 4-27-1501 (1987). On December 10, 1984, appellees, Chester and Sheila Hunstman, executed a promissory note payable to appellant, Johnny's Pizza House, Inc., (Johnny's) for $53,002.84 at 13 1/4% interest per year on the unpaid balance. On January 30, 1991, Johnny's filed suit against the Huntsmans to collect the note. Among other things, the complaint alleged:

> The plaintiff is a Louisiana corporation which has its principal place of business in West Monroe, Louisiana, and is doing business or has done business in Ashley County, Arkansas. The defendants are individuals who

live in Ashley County.

The Huntsmans moved to dismiss Johnny's complaint because Johnny's did not have a certificate of authority to transact business in Arkansas as required by § 4-27-1501 and, as a foreign corporation doing business in Arkansas, which the complaint admitted, such a certificate is required. Further, that as a consequence of not having that certificate, it was precluded under Ark. Code Ann. § 4-27-1502 (1987) from maintaining any action in this state. On February 26, 1991, the Huntsmans filed a motion to treat their earlier motion for dismissal as one for summary judgment.

Johnny's responded to these motions and defended on the premise it was a franchisor only, and it is the franchisee who actually conducts business in Arkansas. It further stated that it applied for the certificate of authority, and argued that the trial court should not dismiss the case until the secretary of state's office decided whether to issue the certificate.

The court heard argument on the motions and took them under submission pending briefs to be submitted by both sides. Based on what was before him, the judge granted a "Summary Judgment of Dismissal." The court found that 1) the specific contract was made in Arkansas and 2) at the time it was made, Johnny's did not have a certificate of authority, and 3) because there were no issues of material fact remaining the Huntsmans were entitled to a judgment of dismissal as a matter of law.

Johnny's filed a motion to amend findings of fact and judgment, or a new trial. The primary point of this pleading was that the trial court had misinterpreted § 4-27-1502, and that as Johnny's had now obtained a certificate of authority from the secretary of state, suit could be maintained. This motion was deemed denied when the trial court failed to act on it in the prescribed time.

Before addressing Johnny's arguments, some discussion of the old and the new Wingo Acts is in order. The former act required any foreign corporation "doing business" in this state to file with the secretary of state and to obtain a certificate of authority. Ark. Stat. Ann. § 64-1201 (1987). Arkansas Stat. Ann. § 64-1202 (1987) provided two distinct penalties. The first

was pecuniary, and the second provided that any contract made in Arkansas was unenforceable by a foreign corporation if the corporation had not filed with the secretary of state and received its certificate of authority. The "new" Wingo Act is part of the "Arkansas Business Corporation Act," enacted as No. 985 in 1987, at § 4-27-101 through 4-27-1705. (§ 64-1201 and 1202 are found in their revised forms at § 4-27-1501 and 1502 respectively.) The Arkansas Business Corporation Act of 1987 is based primarily on the Model Business Corporation Act, which is a product of a committee of the American Bar Association. *See* A.C.A. Commentaries at p. 415; *Centennial Valley Ranch Management, Inc.* v. *Agri-Tech Ltd. Partnership*, 38 Ark. App. 177, 832 S.W.2d 259 (1992).

Under the new act, foreign corporations "transacting business" in this state are still required to file for a certificate of authority. Section 4-27-1501. The primary difference is that this section also lists a number of transactions that will *not* be held to be "transacting business."

The major difference for purposes of this case, however, is in the penalty section, § 4-27-1502. While a pecuniary penalty can still be imposed, the "unenforceable contract" penalty is eliminated and a milder sanction is substituted.

The new "consequences" provision merely requires that in order to maintain a suit, the foreign corporation which transacts business in this state, must first obtain a certificate of authority. Further if such a corporation does commence a proceeding without a certificate, the court may stay the proceedings until it determines whether a certificate is needed, and grant a further stay to allow the foreign corporation to obtain the certificate if it is determined that it is needed.[1] This is in sharp

---

[1] § 4-27-1502. Consequences of transacting business without authority.

A. A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority.

B. The successor to a foreign corporation that transacted business in this state without a certificate of authority and the assignee of a cause of action arising out of that business may not maintain a proceeding based on that cause of action in any court in this state until the foreign corporation or its successor obtains a certificate of authority.

contrast to the former provision that expressly precluded any rehabilitation of the uncertified foreign corporation, and made the contract void *ab initio. See Worthen Bank & Trust Co.* v. *United Underwriters Sales Corp.*, 251 Ark. 454, 474 S.W.2d 899 (1971).[2]

On appeal, Johnny's has challenged the correctness of the trial court's granting of summary judgment, arguing four points for reversal. We need address only the last of these.

It appears from the order that the trial court was acting pursuant to the provisions of the old act. Its focus was on the parties having contracted in Arkansas, which fact would be neither pivotal nor conclusive under the new act. *See* § 4-27-1502;

---

C. A court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor requires a certificate of authority. It is so determines, the court may further stay the proceeding until the foreign corporation or its successor obtains the certificate.

D. A foreign corporation is liable for a civil penalty of not more than five thousand dollars ($5,000) and not less than one hundred dollars ($100) if it transacts business in this state without a certificate of authority. The Secretary of State shall promulgate regulations for the calculation of the appropriate penalty. In determining the appropriate penalty, the Secretary of State shall consider the size and assets of the corporation, the total amount of business transacted by the corporation within the state and such other circumstances as the Secretary of State may institute proceedings in Pulaski county Circuit Court to recover such penalty.

E. Notwithstanding subsections A. and B. of this section, the failure of a foreign corporation to obtain certificate of authority does not impair the validity of its corporate acts or prevent it from defending any proceeding in this state.

[2] Also, there seems to be a little question that under the express provision in the act, that under the facts of this case, the new act would apply. *See* transition provision, § 4-27-1701 through 1706. It was stated in a recent law review article, M. Matthews, "Corporate Statutes — Which Applies?" § 13 UALRLJ 69, at 77:

The issue is whether a nonqualifying foreign corporation which enters into a contract prior to 1988 will be able to qualify and thereafter enforce the contract. The 1987 ABCA transition provisions suggest that the pre-1988 contract will be enforceable. The relevant section provides that "[i]f a penalty or punishment imposed for violation of a statute repealed by this chapter is reduced by this chapter, the penalty or punishment, if not already imposed, shall be imposed in accordance with this chapter." Arguably the harsh penalty of voiding the contract is reduced by the 1987 ABCA comply-and-enforce approach, and the penalty should therefore be imposed according to the new statute.

There is no dispute on this point by the parties.

and *see* generally, *Model Business Corporation Act*, (Supp. 1991), Selected cases, 2. Transacting business. It seems clear the former act was being applied because instead of granting a stay, the trial court dismissed the action, presumably with prejudice.

In its fourth point for reversal, Johnny's argues that the trial court erroneously applied the penalty provisions in the repealed act, and that rather than granting a "dismissal of summary judgment," the trial court should have granted a stay to permit Johnny's to obtain the certificate of authority. We sustain the argument.

*Centennial Valley Ranch Management, supra*, dealt with what action a trial court should take when the defense is raised under the Wingo Act that the plaintiff had not obtained a certificate as required by § 4-27-1501:

> Under the old law (Wingo Act) the nonqualifying foreign corporation was not permitted to enforce any contract made in Arkansas. But [in a law review article, M. Matthew, *Corporate Statutes - Which One Applies?*, 13 USLF 69, 677 (1990) it says that] "the commentary to the revised Model Business Corporation Action which the section is based makes clear the drafters intended a qualifying foreign corporation be able to enforce a contract simply by qualifying."

We agree. The Official Commentary to the Model Business Act on which ours is based, makes it clear that this provision is not to be used to penalize, but to encourage foreign corporations to file. The commentary does not state that the stay should be granted in all cases, but it does provide that the stay is to be liberally granted. The pertinent section of the commentary provides:

### OFFICIAL COMMENT

*The purpose of section 15.02 is to induce corporations that are required to obtain a certificate of authority but have not to qualify promptly, without imposing harsh or erratic sanctions. The Model Act rejects the provisions adopted in a few states that make unenforceable intrastate transactions by unqualified corporations or that impose punitive sanctions or forfeitures on nonqualifying*

*corporations.* Often the failure to qualify is a result of inadvertence or bona fide disagreement as to the scope of the provisions of section 15.01, which are necessarily imprecise; the imposition of harsh sanctions in these situations is inappropriate. Further, as a matter of state policy it is generally preferable to encourage qualification in case of doubt rather than to impose severe sanctions that may cause corporations to resist obtaining a certificate of authority in doubtful situations.

*Section 15.02 closes the courts of the state to suits maintained by corporations which should have but which have not obtained a certificate of authority. However, this sanction is not a punitive one: section 15.02(e) states that the failure of the corporation to qualify does not affect the validity of corporate acts, including contracts. Thus, a contract made by a nonqualified corporation may be enforced by the corporation simply by obtaining a certificate.* Further, section 15.02(c) authorizes a court to stay a proceeding to determine whether a corporation should have qualified to transact business and, if it concludes that qualification is necessary, it may grant a further stay to permit the corporation to do so. Thus, the corporation will not be compelled to refile a suit if the corporation qualifies to transact business within a reasonable period. *The purpose of these provisions is to encourage corporations to obtain certificates of authority and to eliminate the temptation to raise section 15.02 defenses only after applicable statutes of limitation have run.* [Our emphasis.]

Hence, the granting of a stay is in line with the stated intentions of the drafters of the code, and in accord with other jurisdictions operating under similar statutes. *See Charles* v. *Smith & Sons* v. *Lichtefeld-Massaro,* 477 N.E.2d 308 (Ind. App. 1 Dist. 1985) ("failure of a plaintiff foreign corporation to obtain a certificate. . .by the date of the filing of its complaint in Indiana merely suspends rather than bars further legal proceedings until such time as the certificate is obtained); *South Carolina Equipment, Inc.* v. *Sheedy,* 353 N.W.2d 63, 120 Wis2d 119 (Wis. App. 1984) ("Commentators and the vast majority of courts have held that when an unregistered foreign corporation commences

or defends a suit, and during the course of that suit complies with the registration of law, that act is sufficient to allow it to maintain a court action or a defense.") *Tri-Terminal Corp. v. CITC Industries, Inc.*, 78 A.D.2d 609, 432 N.Y.S.2d 184 (1980) (the proper procedure was for the trial court to grant a conditional stay affording the corporation the opportunity to cure the defect.)

We note, too, that the commentary implies that if a dismissal, rather than a stay, is granted, it will not be a dismissal with prejudice: "Thus, the corporation will not be compelled to refile a suit if the corporation qualifies to transact business within a reasonable period."

The appropriate action in this case would have been to grant a stay to Johnny's until it was determined whether a certificate was necessary, and if so, to further stay the proceedings until the corporation obtained the certificate. *See* § 4-27-1502(C). We recognize that Section (C) of 1502 is discretionary and, where appropriate circumstances exist, the trial court may deny the request for a stay. There was no such showing in this case. *See* e.g., *Rigid Component Systems* v. *Nebraska Component*, 202 Neb. 658, 276 N.W.2d 659 (1979).

Reversed with directions consistent with this opinion.