Am. Indoor Air Quality Assessment Servs., Ltd. v. TOMI Envtl. Solutions, Inc., No. 207-9-09 Oecv (Eaton, J., Apr. 26, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                    CIVIL DIVISION
Orange County                                     Docket No. 207-9-09 Oecv

American Indoor Air Quality Assessment Services, Ltd.
and Francis Finigan
          Plaintiffs

v.

TOMI Environmental Solutions, Inc. f/k/a The Ozone Man, Inc.,
Halden Shane, and Richard Johnson
          Defendants


                    Decision on Pending Motions

          The heart of this case involves competing claims for breach of contract arising out of the commercial relationship between an environmental consultant from Vermont and an environmental services provider from California. Plaintiffs also allege that they relied upon certain misrepresentations when entering into the consulting agreement, and thus assert claims for consumer fraud, common-law fraud, and negligent misrepresentation. A claim for breach of the covenant of good faith and fair dealing is also stated in the second amended complaint.

          Once again, the threshold issue is whether the case should be stayed in favor of a parallel action pending in the state courts of California. In the consulting agreement, the parties agreed that the forum for any disputes arising out of their business relationship would be either the courts of California or Vermont with "venue to be at the election of the plaintiff in the case." As such, the parties engaged in an apparent race to the courthouse after their business relationship broke down. Defendants filed a complaint in California on September 18th, 2009, and served the complaint about one month later, on October 16th. In the meantime, plaintiffs filed a complaint in Vermont on September 28th and served it on October 6th.

          Defendants first sought dismissal of the Vermont complaint for lack of subject-matter jurisdiction on the ground that the California complaint had been filed ten days earlier than the Vermont complaint. As this court explained in a March 2010 written decision, however, the mere existence of a pending action in another state is not sufficient to divest this court of its general-subject matter jurisdiction. Instead, the rule is that even when the same action is filed first in another state, our courts have discretion either to go ahead with the litigation here until a final judgment is reached in either state, or to stay the litigation here as a matter of comity pending the outcome in the first action. Restatement (Second) of Conflict of Laws § 86; *Edward Rose Bldg. Co. v. Cascade Lumber Co.*, 621 N.W.2d 193, 196 (Iowa 2001). Because defendants asked only for

dismissal of the action for lack of jurisdiction, and did not provide the court with enough information to determine whether a discretionary stay was warranted, this court declined to undertake the "nuanced analysis" necessary to decide the issue at that time.

Attention then shifted to California, where the parties argued whether that case should proceed. Noting that service had been perfected first in Vermont, the Los Angeles Superior Court stayed the California action "pending the outcome of the Vermont litigation."

Defendants then returned to Vermont and suggested a new reason why the case here should be dismissed or stayed: American Indoor is a Delaware corporation that had not obtained a certificate of authority to do business in this state or to maintain civil actions in the court of this state. 11A V.S.A. § 15.02(a). Defendants argue that the case was not properly commenced here and thus should be stayed in favor of the California action.

The statute referenced by defendants is commonly referred to as the "door-closing" provision of the Model Business Corporations Act. It provides that "[a] foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding . . . in any court in this state until it obtains a certificate of authority." 11A V.S.A. § 15.02(a). As other courts have explained, the statute serves tax-revenue purposes and is primarily meant to encourage foreign corporations to identify themselves so that they may be treated in the same manner as their domestic counterparts. Although the certification requirement is tied to the court process, it is not meant to result in "harsh or erratic sanctions" in litigation. *Johnny's Pizza House, Inc. v. Huntsman*, 844 S.W.2d 320, 323 (Ark. 1992) (quoting Official Comment to the MBCA).

As such, the MBCA tempers the effect of its door-closing statute by permitting corporations to commence civil actions before obtaining certificates of authority. In other words, a corporation may commence an action in the courts of a state by filing a complaint and perfecting service before they obtain the necessary certificates of authority. 11A V.S.A. § 15.02(c); *Huntsman*, 844 S.W.2d at 323. A complaint filed in this manner is valid when filed; the only restriction is that the corporation may not thereafter maintain the action until the certificate is obtained. *Transportation Ins. Co. v. El Chico Restaurants*, 524 S.E.2d 486, 487–88 (Ga. 1999). It appears that the drafters of the MBCA specifically intended that this result replace the more punitive sanctions of earlier registration statutes. See *Huntsman*, 844 S.W.2d at 321–22 (recounting MBCA legislative history); see also, e.g., *Pennconn Enterprises v. Huntington*, 148 Vt. 603, 605 (1987) (explaining that under earlier and now-superseded Vermont statute, foreign corporations were precluded from enforcing contracts in our courts "unless it had procured a certificate of authority before it entered into the contract").

One specific application of the MBCA door-closing statute is that complaints filed by uncertified foreign corporations are effective when filed for purposes of statutes of limitation, even if the corporation does not obtain the certificate until after the limitations period expires. *El Chico Restaurants*, 524 S.E.2d at 487–88. Again, the

2

policy explanation for this is that the door-closing statute serves corporate purposes rather than legal ones, and thus is not meant to be used by defendants for tactical gain. *Huntsman*, 844 S.W.2d at 323; *Chet Adams Co. v. James F. Pedersen Co.*, 413 S.E.2d 827, 828 (S.C. 1992).

It stands to reason that if a complaint is valid when filed for purposes of the statute of limitations, the same is true for purposes of the "prior action pending" doctrine. Any other result would contravene the expressed policy of avoiding interpretations of the MBCA door-closing statute that result in substantive litigation consequences. *Huntsman*, 844 S.W.2d at 323.

For the foregoing reasons, the complaint here was effective when filed, and so the court is not persuaded that it should change its prior assessment of the case. It is true that the California action was filed first by ten days, but defendants still have not offered any persuasive reason why this court should stay this case in favor of the litigation pending in Los Angeles. In particular, it appears that the substantive issues here have been at least somewhat developed through motion practice and amended pleadings, and there is the fact that the Los Angeles Superior Court has chosen to stay the California action pending the outcome here. Given those considerations, it would not make sense for this court to treat the case as though it were a hot potato. Defendant's motion for reconsideration is denied, and this court does not expect to entertain further motions revisiting this issue unless the California action reaches final judgment first.

Most of the remaining motions seek dismissal of some or all of the complaint for a variety of reasons. Because there is substantive overlap between the various motions, the court discusses the proffered reasons for dismissal by issue rather than by motion.

Defendants argue first that Francis Finigan should be dismissed as a plaintiff because he was not a party to the consulting agreement and thus cannot recover for breach of contract. In the second amended complaint, however, plaintiffs have alleged that Mr. Finigan was an intended third-party beneficiary of the consulting agreement because he personally received compensation under the agreement in the form of stock. It is at least possible that there are facts supporting this assertion, and so dismissal is not appropriate here. *Ass'n of Haystack Property Owners, Inc. v. Sprague*, 145 Vt. 443, 446 (1985). Defendants' contentions that the parties never intended such a thing when drafting the consulting agreement are directed to the merits of the claim, and thus are better evaluated on summary judgment. See *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 14, 184 Vt. 1 (motions to dismiss are not the appropriate time or place to test the factual strength of plaintiffs' case).

Defendants also argue that Francis Finigan was not personally defrauded. Again, in the second amended complaint, it is alleged that he personally provided services in reliance upon misrepresented promises of compensation. Although there may be factual questions about the nature of the misrepresentations and Mr. Finigan's role as an agent for American Indoor, now is not the time or place to resolve the merits of those questions. *Colby*, 2008 VT 20, ¶ 14.

3

Defendants next argue that the consulting agreement does not contain any misrepresentations about the existence of a "warrant program" or stock-option policy, and thus the claims for consumer fraud, common-law fraud, and negligent misrepresentation should be dismissed. Most of the argument here involves characterizing whether the representations about the "WARRANT PROGRAM" in the consulting agreement were actionable as false promises of future performance or rather non-actionable because they were merely statements of intention to perform contractual commitments at some future time. *Howard v. Usiak*, 172 Vt. 227, 231–32 & n.1 (2001). A related argument is whether plaintiffs have reasonably interpreted what the language meant. Both of these arguments are plainly directed to the merits of the fraud and misrepresentation claims, and are thus not appropriate for consideration under Rule 12.

Defendants respond that the court is not powerless under Rule 12 to interpret unambiguous contracts as a matter of law. Although that may be true in situations where there is no set of facts that would support the plaintiff's claims, there appears to be a legitimate question here as to whether the representations about the warrant program and stock options were misleading or otherwise actionable. And at the very least, before interpreting what the language means, the court must determine first whether the contract language is ambiguous—a determination that normally contemplates an opportunity for the contracting parties to demonstrate whether the "writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances." *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579 (1988). It is at least possible that plaintiffs could demonstrate an ambiguity in the contract and thus persuade the court that the intent of the parties should be determined as a matter of fact. *Dep't of Corrections v. Matrix Health Systems, P.C.*, 2008 VT 32, ¶ 12, 183 Vt. 348. For these reasons, the motion to dismiss is denied.

Defendant Richard Johnson has moved for summary judgment on the same issue. But his motion as originally filed was directed only to the question of whether he made any representations at all to the plaintiffs. It was only in his reply brief, submitted after the second amended complaint was filed, that he argued that he was entitled to a substantive ruling on the interpretation to be afforded the consulting agreement. As such, the issue was not properly framed. His motion for summary judgment is denied without prejudice to re-filing the same after an adequate period of discovery.

Mr. Johnson also contends that the negligent misrepresentation claim is barred by the economic-loss doctrine. Broadly stated, the economic-loss doctrine seeks to preserve the boundary between tort law and contract law by preventing parties from obtaining tort recoveries for purely economic losses arising out of contractual relationships. *Hamill v. Pawtucket Mut. Ins. Co.*, 2005 VT 133, ¶¶ 7–9, 179 Vt. 250. Mr. Johnson relies here on two Vermont District Court opinions that have dismissed negligent misrepresentation claims as barred by the economic-loss rule. See *Hunt Construction Group, Inc. v. Brennan Beer Gorman/Architects, P.C.*, No. 1:08-CV-65, 2008 WL 4870993 (D. Vt. Nov. 3, 2008) (dismissing construction company's claim that architect negligently misrepresented certain information in its plans and thus caused construction company to

4

suffer economic losses); *City of Burlington v. Zurn Industries, Inc.*, 135 F.Supp.2d 454, 461–62 (D. Vt. 2001) (dismissing city's claim that it suffered economic losses when inspector negligently misrepresented during an inspection that a boiler was in compliance with code requirements). Both of those cases, however, involved allegations that the defendant negligently performed one of its contractual obligations.

Here, the alleged misrepresentations were made when plaintiffs were deciding whether to enter into the contract itself. In this circumstance, it is well established that the duty of care is imposed by tort law. See Restatement (Second) of Torts § 552(1) (explaining that actors owe a duty to exercise reasonable care when communicating information for the guidance of others in their business transactions). A number of Vermont cases support the recovery of economic damages for negligent misrepresentations affecting a plaintiff's decision to enter into a contract. See, e.g., *Pearson v. Simmonds Precision Prods., Inc.*, 160 Vt. 168, 169–71 (1993) (affirming recovery of economic damages for negligent misrepresentations made "to induce plaintiff to accept defendant's job offer"); *Silva v. Stevens*, 156 Vt. 94, 113 (1991) (affirming recovery of economic damages for real estate agent's misrepresentations of quality of earth-sheltered home). Because the present case involves an allegation that the misrepresentation affected plaintiffs' decision to enter into the contract itself, the duty of care in this case is imposed by tort law rather than by the contract. As such, recovery of economic damages is permissible under the holdings of *Pearson* and *Silva*.

It appears that the Second Circuit has recently certified to the Vermont Supreme Court the question of whether the economic-loss rule applies to claims of negligent misrepresentation. See *Hunt Construction Group, Inc. v. Brennan Beer Gorman/Architects, P.C.,* 607 F.3d 10, 17–18 (2d Cir. 2010). But, as noted above, the facts of the *Hunt Construction* case are distinguishable from the present situation because the duty of care there arose from a contractual obligation rather than from tort law. It is therefore unlikely that the pending decision in that case will affect the outcome here. In the meantime, in any event, this court remains bound by *Pearson* and *Silva*: recovery of economic damages is permitted when the negligent misrepresentation affects the plaintiff's decision to enter into a contract.

Lastly, plaintiffs' second motion to amend the complaint is granted because there is no harm in doing so. See *Bevins v. King*, 143 Vt. 252, 254–55 (1983) (explaining that amendments should be liberally granted under Rule 15).

**ORDER**

(1) Plaintiffs' Motion for Default Judgment (MPR #3), filed August 9, 2010, is ***denied***;

(2) Defendants' Motion to Dismiss For Failure to Obtain a Certificate of Authority (MPR #6), filed October 29, 2010, is ***denied***;

(3) Defendants' Motion to Dismiss as to Plaintiff Francis X. Finigan (MPR #7), filed October 29, 2010, is ***denied***;

(4) Defendant Richard Johnson's Motion to Dismiss (MPR #8), filed October 29, 2010, is ***denied***;

(5) Defendant Richard Johnson's Motion for Summary Judgment (MPR #9), filed October 29, 2010, is ***denied***;

(6) Defendants' Motion to Reconsider Denial of Motion to Dismiss This Action In Favor of a Prior Action Pending in California (MPR #11), filed November 15, 2010, is ***denied***;

(7) Plaintiffs' Second Motion to Amend Complaint (MPR #12), filed December 20, 2010, is ***granted***;

(8) Defendants' Motion to Dismiss Counts II, III, and IV of the Second Amended Complaint (MPR #13), filed December 23, 2010, is ***denied***;

(9) Defendants' Motion to Reconsider Denial of Motion to Dismiss This Action In Favor of a Prior Action Pending in California (MPR #14), filed December 23, 2010, is ***denied***; and

(10) All answers are due by Monday, May 16, 2011. The parties shall file an ADR/discovery stipulation by Wednesday, June 15, 2011.

Dated at Chelsea, Vermont this _____ day of April, 2011.


_____
Harold E. Eaton, Jr.
Superior Court Judge

6